Filed 7/8/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STACEY CHAVEZ et al., | H040987 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 112CV236937) |
| v. | |
| 24 HOUR FITNESS USA, INC., | |
| Defendant and Respondent. | |

Plaintiffs Stacey and Ruben Chavez appeal from a judgment entered in favor of defendant 24 Hour Fitness USA, Inc. (24 Hour) after the trial court granted 24 Hour's motion for summary judgment. Stacey suffered a traumatic brain injury while exercising at one of 24 Hour's facilities in San Jose, California. She and her husband, Ruben, who sought recovery for loss of consortium, sued 24 Hour for ordinary and gross negligence, premises liability, and strict products liability.

On appeal, plaintiffs contend there is a triable issue of fact as to whether 24 Hour was grossly negligent. We agree and shall reverse.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Stacey became a member of 24 Hour's Parkmoor facility on January 3, 2011. On that date, she signed a membership agreement that included a release of liability.[2] Under

---

[1] We take the relevant facts from the record that was before the trial court when it ruled on 24 Hour's motion. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1034-1035.) Unless otherwise noted, the facts recited are undisputed. Where the facts are in dispute, we recount plaintiffs' version of the facts.

[2] The release provision was preceded by the heading: "**Release of Liability-- Assumption of Risk--Buyer's Right to Cancel--Membership Term.**" The provision (continued)

the release provision, Stacey agreed, among other things, that 24 Hour would not be liable for any injury she suffered as a result of from 24 Hour's negligence

Stacey was injured on February 28, 2011, when the back panel of a "FreeMotion" cable crossover machine ("cross-trainer") struck her in the head at the 24 Hour's Parkmoor facility. As a result of the traumatic brain injury she sustained, Stacey experiences lapses of consciousness, severe headaches, photophobia, poor memory, stuttering, dizziness, nausea, changes in her ability to taste, decreased appetite, and personality changes that have interfered with her work, marriage, and other relationships. Plaintiffs filed a complaint against 24 Hour alleging claims for ordinary and gross negligence, premises liability, and strict products liability on November 30, 2012.

---

stated (bold and underscoring in original): "Using the 24 Hour Fitness USA, Inc. (24 Hour) facilities involves the risk of injury to you or your guest, whether you or someone else causes it. Specific risks vary from one activity to another and the risks range from minor injuries to major injuries, such as catastrophic injuries including death. **In consideration of your participation in the activities offered by 24 Hour, <u>you understand and voluntarily accept this risk and agree that 24 Hour</u>, its officers, directors, employees, volunteers, agents and independent contractors <u>will not be liable for any injury</u>, including, without limitation, personal, bodily, or mental injury, economic loss or any damage to you, your spouse, guests, unborn child, or relatives resulting from any negligence of 24 Hour or anyone on 24 Hour's behalf or anyone using the facilities <u>whether related to exercise or not</u>**. You agree to indemnify, defend and hold 24 Hour harmless against any liability, damages, defense costs, including attorney fees, or from any other costs incurred in connection with claims for bodily injury, wrongful death or property damage caused by your negligence or other wrongful acts or omissions. You further agree to hold harmless, defend and indemnify 24 Hour from all liability, damages, defense costs, including attorneys fees, or from any other costs incurred in connection with claims for bodily injury, wrongful death or property damage brought by you, your guests, or minors, even if 24 Hour was negligent. Further, you understand and acknowledge that 24 Hour does not manufacture fitness or other equipment at its facilities, but purchases and/or leases equipment. You understand that 24 Hour is providing recreational services and may not be held liable for defective products. By signing below, you acknowledge and agree that you have read the foregoing and know of the nature of the activities at 24 Hour and you agree to all the terms on pages <u>1 through 4</u> of this agreement and acknowledge that you have received a copy of it and the membership policies."

On October 25, 2013, 24 Hour moved for summary judgment. It argued that the written release of liability in the membership agreement was a complete defense to plaintiffs' claims for negligence and premises liability. As to the products liability claim, 24 Hour argued it was not subject to liability because it was a service provider and not in the chain of distribution. Finally, 24 Hour maintained plaintiffs could not show "extreme departure from the ordinary standard" of "care or failure to exercise scant care," as required to state a gross negligence claim because 24 Hour "employed a technician to routinely inspect and perform preventative maintenance on the equipment."

In support of its motion for summary judgment, 24 Hour submitted the declaration of John Reb, the area manager of facilities responsible for overseeing equipment maintenance for 24 Hour facilities in Northern California, including the Parkmoor 24 Hour. Reb declared that 24 Hour employs a facilities technician at each club who is responsible for maintenance, inspection, and repair of exercise equipment. The facilities technician is tasked with performing monthly preventative maintenance on each piece of exercise equipment. In doing so, the facilities technician is to "follow[] and complete[]" the preventative maintenance chart provided to them. A copy of the February 2011 preventative maintenance chart for the Parkmoor facility was attached to Reb's declaration. According to Reb, that chart showed the facilities technician "would have been responsible for performeing [*sic*] preventative maintenance" on the cross-trainer during the week of February 7, 2011, which would have involved removing the back panel. The cross-trainer is among the pieces of equipment listed on the February 2011 preventative maintenance chart for the week of February 7, 2011.

Reb further declared that the facilities technician also is responsible for repairing equipment as needed. A maintenance log of such repairs is stored in a computer program called "Accruent." A printout of the Accruent maintenance log for the Parkmoor facility from August 2009 through April 2011 was attached to Reb's declaration. That printout showed six work orders for the cross-trainer. According to Reb, one of those work

3

orders, dated March 1, 2010, "would have likely required removal of the back panel of the equipment to perform the repair."

24 Hour also submitted the declaration of Gabriel Galan, who was the service manager of the Parkmoor facility in February 2011. Galan declared 24 Hour employs facilities technicians to inspect exercise equipment during daily walk-throughs and to perform monthly preventative maintenance. According to Galan, "facilities technicians are required to complete a Preventative Maintenance Chart, documenting the preventative maintenance performed on the equipment." Referencing the same February 2011 preventative maintenance chart for the Parkmoor facility that Reb discussed, Galan declared it showed the cross-trainer "underwent preventative maintenance the week of February 7, 2011."

On November 8, 2013, two weeks after 24 Hour moved for summary judgment, plaintiffs subpoenaed Mark Idio to appear for a deposition on December 23, 2013. 24 Hour had identified Idio in a May 2013 discovery response as the person responsible for equipment maintenance at the Parkmoor facility when Stacey was injured. After identifying Idio, 24 Hour represented it would produce him. However, in October 2013, plaintiffs learned 24 Hour could not locate Idio, now a former employee.

Plaintiffs opposed 24 Hour's motion for summary judgment and, in the alternative, sought a continuance under Code of Civil Procedure section 437c, subdivision (h),[3] on January 14, 2014. Plaintiffs argued that there was no evidence anyone actually performed preventative maintenance on the cross-trainer machine prior to the accident. They further maintained 24 Hour failed to exercise scant care by not performing maintenance on the cross-trainer as called for in the owner's manual and by allowing the machine to remain in service despite a missing bracket and missing magnetic strips designed to secure the back panel.

---

[3] Unspecified statutory references are to the Code of Civil Procedure.

Plaintiffs submitted a declaration from John Manning, a mechanical engineer specializing in engineering design of exercise equipment. Manning inspected the cross-trainer at issue on November 25, 2013. He stated that the back panel should be held in place by four metal brackets and magnetic strips. At the time of Manning's inspection, the upper right bracket and upper left magnetic strips were missing. The three remaining brackets were bent or worn and beginning to separate from the machine.

Plaintiffs also submitted the declaration of Ronald Labrum, a consultant and supplier specializing in physical conditioning equipment. Labrum opined that it is custom and practice in the fitness industry to perform preventative maintenance on all machinery in compliance with the applicable owner's manual. Labrum declared that the cross-trainer's owner's manual required that the rear access panel be removed weekly for maintenance. That opinion was based on the fact that the manual calls for the application of a decal inside the back panel that states "inspect all cables, straps, moving parts and fasteners weekly."

Finally, plaintiffs submitted the deposition testimony of two members of 24 Hour's Parkmoor facility, Jane Horner and Gregory Stevens, who witnessed Stacey's accident. Horner testified that "[t]here are generally a few [fitness machines] that are always out of repair." She recalled reporting to club staff that pads on an upper body machine were torn. Stevens testified that he had problems with machines at 24 Hour "[q]uite often." He reported issues to "the maintenance guy" who "would usually come right over and check it out." He had seen cables break on the weight machines while they were in use "and the weights come slamming down," but he had never seen a panel fall off a machine before.

In support of their opposition, plaintiffs also submitted the deposition testimony of Reb and Galan. In his deposition, Reb acknowledged that nothing on the February 2011 preventative maintenance chart for the Parkmoor facility indicates that someone actually performed the maintenance called for on the chart. According to Reb, all of the

5

preventative maintenance logs he reviewed for the Parkmoor facility--including the February 2011 preventative maintenance chart--were blank, meaning no dates were filled in showing when the preventative maintenance was performed. Reb said he "assum[es] that preventative maintenance [was] being done based on the fact that work orders" for the cross-trainer were generated in subsequent months. He further assumed preventative maintenance was being performed on the cross-trainer because it is a popular piece of equipment so "we would know" if something was wrong with it and "[w]ork orders would be generated to resolve any repairs associated with it." Reb stated that Idio was the facilities technician at the Parkmoor facility in February 2011; Idio was responsible for completing the preventative maintenance charts. Reb inspected the cross-trainer at issue at the Parkmoor facility on January 2, 2014. At that time, the top right bracket for the back panel was missing and the panel was held in place with screws, which were inserted after Stacey's accident.

Galan testified in his deposition that Idio was the facilities technician at the Parkmoor facility at the time in question, but was no longer employed at the Parkmoor facility. Galan stated that he helped replace the back panel onto the cross-trainer after Stacey's accident. At that time, "it held and it was secure"; he did not know what caused it to fall off. Galan did not recall whether the back panel's upper right bracket was missing at that time. At Galan's direction, Idio inserted screws into the cross-trainer's back panel to prevent it from falling off again.

Galan did not know whether facilities technicians were required to be familiar with the owner's manual for each piece of equipment or whether 24 Hour facilities keep such manuals on hand. In reference to the February 2011 preventative maintenance chart for the Parkmoor facility, Galan was asked "Could you just explain to me if anybody was supposed to mark what they had done or how is this form used by 24 Hour Fitness, if you know?" Galan responded: "Yes. It's generally supposed to have duties of when each particular task is complete." Galan stated that the preventative maintenance listed on the

6

February 2011 preventative maintenance chart "should have been done" but he did not know "if it was done."

In their opposition, plaintiffs requested a section 437c, subdivision (h) continuance to depose Idio. In support of that request, plaintiffs submitted the declaration of their attorney, Jayme Burns. Attached to the Burns declaration was a copy of the November 8, 2013 subpoena and e-mail correspondence with Idio. The correspondence indicates Idio e-mailed one of plaintiffs' attorneys on December 21, 2013, indicating he had just learned about the subpoena and inviting the attorney to call him on his cell phone. The attorney responded that the deposition--originally scheduled for December 23, 2013--had been canceled and that he would call Idio on his cell phone. Idio responded "please do contact me with updates so that I may make any arrangements that may be needed." Burns declared that she tried to contact Idio by phone "at least three times to set up his deposition and he has not returned my call."

On reply, 24 Hour contended plaintiffs' experts' opinions lacked foundation because (1) there was no evidence one of the back panel brackets was missing at the time of the accident and (2) the cross-trainer's owner's manual does not require the back panel to be removed weekly. As 24 Hour noted, the owner's manual recommends that nuts, bolts, and cables be checked weekly. The manual specifically recommends inspecting "the cable inside of the cut stack tower." Reb testified that all cables, straps, and moving parts can be inspected without removing the back panel. 24 Hour also submitted deposition testimony from 24 Hour member Gregory Stevens that maintenance staff were "almost always wandering around doing something" at the club. Stevens testified that he thought the maintenance staff did maintenance in addition to repairs "[b]ecause sometimes [he] would just see them trying out a machine for a couple of minutes and maybe they would put a little lubricant or something on it, and that would be it, you know."

7

A summary judgment hearing was held on January 28, 2014. In an order filed on February 11, 2014, the trial court denied plaintiffs' request for a continuance, reasoning Burns' declaration failed to show good cause given that Idio was identified in a May 2013 discovery response but not subpoenaed until November 2013, after 24 Hour moved for summary judgment. The court granted 24 Hour's motion for summary judgment in the February 11, 2014 order. As to the products liability claim, the court reasoned the primary purpose of the membership agreement was the provision of fitness services and noted that plaintiffs did not dispute 24 Hour was entitled to summary judgment on that claim. The court ruled that the ordinary negligence and premises liability causes of action were barred by the release of liability in the membership agreement. As to gross negligence, the court concluded 24 Hour met its burden to show it was not grossly negligent by establishing "it had a system of preventative and responsive maintenance of its equipment in place at its locations at the time Plaintiff was injured." The court concluded plaintiffs failed to present evidence creating a triable issue as to whether there was gross negligence because failure "to maintain the machines according to some industry standard or as recommended in the owner's manual . . . is a common enough occurrence that no reasonable juror could find it to be such an 'extreme departure from the ordinary standard of conduct' as to constitute gross negligence."

The court entered judgment on March 25, 2014. Plaintiffs timely appealed on May 15, 2014.

II.    DISCUSSION

On appeal, plaintiffs contend there is a triable issue of fact whether 24 Hour was grossly negligent, precluding summary judgment. The parties agree that the release of liability does not bar the gross negligence claim. Plaintiffs also challenge the court's denial of their request for a continuance. They do not appeal as to their products liability, ordinary negligence, and premises liability causes of action.

8

### A.   *Standard of Review*

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law.  (§ 437c, subd. (c).)  A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense.  (*Id.*, subd. (p)(2).)  If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact.  (*Ibid.*)  A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent.  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  We review the decision whether to grant a continuance under section 437c, subdivision (h), for an abuse of discretion.  (*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 643.)

### B.   *Gross Negligence*

"Gross negligence is pleaded by alleging the traditional elements of negligence: duty, breach, causation, and damages.  [Citation.]  However, to set forth a claim for 'gross negligence' the plaintiff must" also allege conduct by the defendant involving either " ' " ' "want of even scant care" ' " or " ' "an extreme departure from the ordinary standard of conduct." ' " ' "  (*Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1072, 1082; *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754 (*Santa Barbara*) [" 'Gross negligence' long has been defined . . . as either a ' " 'want of even scant care' " ' or ' " 'an extreme departure from the ordinary standard of conduct.' " ' "].)  Gross negligence " 'connotes such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results . . . .' "  (*Eriksson v. Nunnink* (2011) 191

9

Cal.App.4th 826, 857.)

"Generally it is a triable issue of fact whether there has been such a lack of care as to constitute gross negligence [citation] but not always." (*Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 358; accord, *Santa Barbara*, *supra*, 41 Cal.4th at p. 767.) In *Santa Barbara*, our Supreme Court "emphasize[d] the importance of maintaining a distinction between ordinary and gross negligence, and of granting summary judgment on the basis of that distinction in appropriate circumstances." (*Santa Barbara*, *supra*, at p. 767.)

At issue on appeal is whether plaintiffs raised a triable issue of material fact as to whether 24 Hour's conduct constituted gross negligence. For the reasons discussed below, we conclude they did.

Viewed in the light most favorable to the plaintiffs, the evidence shows regular preventative maintenance was not performed at the Parkmoor facility prior to Stacey's accident. Galan and Reb testified the club facilities technician--Mark Idio--should have performed preventative maintenance on each piece of equipment each month. They agreed that the February 2011 preventative maintenance chart for the Parkmoor facility indicated preventative maintenance should have been performed on the cross-trainer during the week of February 7, 2011. Reb testified that the February 2011 preventative maintenance chart was blank, such that he could not say whether the called-for maintenance had been performed. Galan likewise did not know whether the preventative maintenance listed on the February 2011 preventative maintenance chart was completed.

Reb and Galan's testimony was ambiguous as to whether dates or other notations should have been made on the preventative maintenance chart when each preventative maintenance task was completed.[4] In view of the requirement that we resolve evidentiary

---

[4] Galan was asked: "Could you just explain to me if anybody was supposed to mark what they had done or how if this form is used by 24 Hour Fitness, if you know?" (continued)

10

ambiguities in plaintiffs' favor (*Elk Hills Power*, *LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 606), we conclude that notations should have been made on the preventative maintenance chart to indicate the completion of each task. The absence of such notations supports the inference that no preventative maintenance was performed in February 2011.

Reb testified that all of the preventative maintenance logs he reviewed for the Parkmoor facility were blank. That evidence supports the inference that preventative maintenance consistently was not performed at that facility.[5]

He responded: "Yes. It's generally supposed to have duties of when each particular task is complete."
Reb testified as follows:
"Q. You said you reviewed the monthly preventative maintenance reports in preparation for your deposition, right?
"A. Correct.
"Q. Are the ones you reviewed, are they dated or is there any writing to indicate that that monthly preventative maintenance was performed?
"A. The documents that I reviewed, no.
"Q. Do you know if 24 Hour Fitness maintains those documents to show that that maintenance was performed?
"A. We have a digital documentation system that we maintain. However, in a lot of facilities these documents are printed and handled inside the club manually.
"Q. So the dates that the inspections or maintenance are performed are handwritten in?
"A. In some cases, yes.
"Q. Do you know if that's done in the Parkmoor facility?
"A. At the time of the incident or today?
"Q. How about both. First we'll say at the time of the incident.
"A. At the time of this incident, I would assume yes. Currently, they are handled digitally.
"Q. Do you know if the 24 Hour Fitness at the Parkmoor facility maintains the manual preventative maintenance records somewhere in the facility or anywhere?
"A. I do not."
[5] Accordingly, *Grebing v. 24 Hour Fitness USA*, *Inc.* (2015) 234 Cal.App.4th 631, on which 24 Hour relies, is distinguishable. In *Grebing*, the Second District affirmed a grant of summary judgment in 24 Hour's favor on a claim it acted with gross negligence in maintaining a low row machine. The appellate court reasoned "24 Hour's conduct cannot reasonably be regarded as demonstrating a want of even scant care or an extreme (continued)

11

Testimony from club-goers that they saw maintenance being performed at the Parkmoor facility does not show that *regular preventative* maintenance was performed. It is undisputed that maintenance staff also was responsible for making as-needed repairs. Such repairs would occur when, for example, club members like Stevens and Horner reported issues to club management. Stevens' testimony that he "th[ought]" the maintenance staff performed maintenance in addition to repairs because he "would just see them trying out a machine for a couple of minutes and maybe they would put a little lubricant or something on it, and that would be it, you know," says nothing about the regularity with which preventative maintenance was performed.

A trier of fact could conclude from the record evidence that 24 Hour failed to perform regular preventative maintenance and, on that basis, that it failed to exercise scant care or demonstrated passivity and indifference toward results. In addition to the question whether 24 Hour performed regular preventative maintenance on the cross-trainer, other triable issues of material fact bearing on the question of gross negligence exist. These include whether one of the brackets designed to hold the cross-trainer's back panel in place was missing when the panel fell on Stacey and whether the cross-trainer owner's manual required that the rear access panel be removed weekly for maintenance. (*Jimenez v. 24 Hour Fitness USA, Inc.* (2015) 237 Cal.App.4th 546 [plaintiffs created a triable issue of fact as to whether failure to comply with fitness equipment owner's manual constituted an extreme departure from the ordinary standard of conduct].) For these reasons, the evidence raises a triable issue of fact as to whether 24 Hour's conduct with respect to preventative maintenance at the Parkmoor facility was grossly negligent.

---

departure from the ordinary standard of conduct" given "undisputed" evidence "that 24 Hour took several measures to ensure that its exercise equipment and facility were well maintained." (*Id.* at p. 639.) By contrast, here, the evidence suggests 24 Hour did not take such measures.

### C.     *Continuance Request*

Plaintiffs also argue the court erred when it denied their request for a continuance to take Idio's deposition.

Section 437c, subdivision (h) provides:  "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just.  The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

We review a court's ruling on a request for a section 437c, subdivision (h) continuance for abuse of discretion.  (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038.)  "Notwithstanding the court's discretion in addressing such continuance requests, 'the interests at stake are too high to sanction the denial of a continuance without good reason.'  [Citation.]  Thus, '[t]o mitigate summary judgment's harshness, the statute's drafters included a provision making continuances--which are normally a matter within the broad discretion of trial courts--virtually mandated " 'upon a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion.' " ' "  (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100-101.)

To make the requisite good faith showing, an opposing party's declaration must show (1) the facts to be obtained are essential to opposing the motion, (2) there is reason to believe such facts may exist, and (3) the reasons why additional time is needed to obtain these facts.  (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715 (*Lerma*).)  The reason for this "exacting requirement" (*ibid*.) is to prevent "every unprepared party who simply files a declaration stating that unspecified essential facts may exist" (*id*. at pp. 715-716) from using the statute "as a device to get an automatic

13

continuance." (*Id*. at p. 715.) "The party seeking the continuance must justify the need, by detailing both the particular essential facts that may exist and the specific reasons why they cannot then be presented." (*Id*. at p. 716.)

Here, plaintiffs' attorney declared only that she had tried to contact Idio by phone three times without success and attached copies of the November 2013 subpoena and December 2013 e-mail correspondence with Idio. She did not indicate what facts Idio might provide, nor why they might be essential. Accordingly, we cannot say the declaration satisfied the section 437c, subdivision (h) requirements.

Even absent a sufficient declaration, "the court must determine whether the party requesting the continuance has nonetheless established good cause therefor." (*Lerma*, *supra*, 120 Cal.App.4th at p. 716.) Under the facts of this case, it was an abuse of discretion to deny plaintiffs' request for a continuance to depose Idio. We reach this conclusion for three reasons.

First, the purpose of the declarations required by section 437c, subdivision (h) is to inform the court of outstanding discovery necessary to resist the summary judgment motion. (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 397.) Here, the declaration and summary judgment papers together were sufficient to notify the court of the need for Idio's testimony. It was apparent from the summary judgment briefing that Idio likely possesses unique knowledge regarding the primary dispute--whether and how 24 Hour maintained the cross-trainer prior to Stacey's accident. That the purpose of the requisite declaration was otherwise satisfied weighs in favor of granting a continuance despite the absence of an adequate declaration.

Second, in deciding whether to continue a summary judgment to permit additional discovery courts consider various factors, including: (1) how long the case has been pending; (2) how long the requesting party had to oppose the motion; (3) whether the continuance motion could have been made earlier; (4) the proximity of the trial date or the 30-day discovery cut-off before trial; (5) any prior continuances for the same reason;

14

and (6) the question whether the evidence sought is truly essential to the motion. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 10:208.1, p. 10-90 (rev. #1, 2014).) Most of these factors favor a continuance here. The case had been pending for just over one year. No trial had been set and discovery remained open. No prior continuances had been sought or granted. And, most importantly, Idio's testimony plainly was essential to plaintiffs' opposition.

Third, " '[j]udges are faced with opposing responsibilities when continuances for the hearing of summary judgment motions are sought. On the one hand, they are mandated by the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.) to actively assume and maintain control over the pace of litigation. On the other hand, they must abide by the guiding principle of deciding cases on their merits rather than on procedural deficiencies. [Citation.] Such decisions must be made in an atmosphere of substantial justice. When[, as here,] the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency.' " (*Lerma*, *supra*, 120 Cal.App.4th at pp. 717-718.)

The trial court refused to grant a continuance because plaintiffs' request was made after 24 Hour moved for summary judgment. But of course section 437c, subdivision (h) expressly contemplates the filing of continuance requests "at any time on or before the date the opposition response to the motion is due." The request was filed within that timeframe. And while we recognize that the requesting party's lack of diligence is relevant to the inquiry, here the delay in contacting Idio was not entirely caused by plaintiffs. (*Rodriguez v. Oto*, *supra*, 212 Cal.App.4th at p. 1038.) As plaintiffs' counsel explained at the summary judgment hearing, it was not until October 2013 that plaintiffs learned 24 Hour could not locate Idio. Prior to that time, 24 Hour had represented that it would produce Idio. Under those circumstances, we cannot say lack of diligence justifies the denial of plaintiffs' request for a continuance.

15

## III. DISPOSITION

The judgment is reversed.  On remand, the trial court should grant plaintiffs' request for a continuance to take Mark Idio's deposition.  Plaintiffs shall recover their costs on appeal.

_____
                                       Walsh, J.[*]

WE CONCUR:

_____
        Rushing, P.J.

_____
        Elia, J.

---

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 112CV236937 |
| Trial Judge: | Hon. William J. Elfving |
| Counsel for Plaintiffs/Appellants:<br>Stacey Chavez<br>Ruben Chavez | Gwilliam, Ivary, Chiosso, Cavalli &<br>Brewer<br>Steven R. Cavalli<br>Jayme L. Walker |
| Counsel for Defendant/Respondent:<br>24 Hour Fitness USA, Inc. | Prindle, Amaro, Goetz, Hillyard, Barnes<br>& Reinholtz<br>Jack C. Nick<br>Robert R. Willis |

Chavez et al. v. 24 Hour Fitness USA, Inc.

H040987