Filed 3/20/26  Sartipi v. Travis Credit Union CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALI SARTIPI,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>TRAVIS CREDIT UNION,<br><br>        Defendant and Respondent. | A174058<br><br>(Solano County Super. Ct.<br>No. FCS057314) |

Ali Sartipi sued Travis Credit Union (Travis) for gender discrimination under the Fair Employment and Housing Act (FEHA), alleging it fired him because he is male.  (Gov. Code, § 12900 et seq.)  The trial court granted Travis's motion for summary judgment.  Sartipi appeals from that order and from the denial of his request for a continuance of the summary judgment hearing.  We affirm.

### BACKGROUND

Travis is a nonprofit cooperative offering various financial products and services.  Many of its employees have personal member accounts at the cooperative.  The employee handbook governs access to those accounts. It acknowledges employees " 'may need access to member information throughout the workday *for* [*Travis*] *business*.' "  (Italics added.)  It emphasizes the importance of " 'maintaining the security and confidentiality

1

of member information.' " It also warns that Travis " 'reviews and monitors the activities for all member accounts, including employee-member accounts,' " and that its auditors and employees, such as tellers and loan officers, may review personal information associated with the accounts " 'in the normal course of business.' " Employees are required to sign a statement that " 'failure to adhere to the employee handbook may result in disciplinary action, up to and including termination of employment.' " And the handbook notes that employment at Travis is at-will — that it may terminate employment " 'any time, with or without a reason and with or without notice' " and without cause.

Travis hired Sartipi in 2010, and he later became the Veranda branch manager in 2018 or 2019. In that role, he supervised approximately five to 10 employees while Mark Castro, the regional manager, in turn supervised him. Sartipi acknowledged receiving the employee handbook and that accessing a member's financial information was only authorized for business purposes. He also understood the importance of maintaining the security of confidential member information.

In June 2021, Travis received an anonymous complaint requesting an investigation of the departure and subsequent resignation of a former Veranda branch supervisor, Jocelyn Gutierrez. The complaint speculated that she resigned due to a confrontation with Sartipi regarding an ongoing issue. Based on the complaint, two Travis human resources representatives — both female — initiated an investigation. One investigator learned about an allegation that Sartipi showed Giovanni Chamberlain, a subordinate employee, an explicit photo of another female Travis employee. But during human resources interviews, Chamberlain stated variously that he did not recall being shown any explicit photo or that

2

it absolutely did not happen. The human resources representatives ultimately concluded Chamberlain was being dishonest and it was more likely than not that Sartipi showed the photo to him.

Human resources uncovered an additional allegation that Sartipi accessed certain employees' personal financial accounts without permission or a business purpose. Data logs revealed he accessed the accounts of four women, including Gutierrez and Vicki Vasquez, a financial services representative. From September 2020 through July 2021, he accessed Gutierrez's account once, Vasquez's account 37 times, another woman's account 29 times, and the last woman's account six times. Gutierrez was particularly upset, stressed, and angry that he looked at her account.

Sartipi admitted improperly accessing Gutierrez's account without her permission in 2020. He explained he simply checked her confidential financial information to verify she was taking a sick day rather than vacation time. Upon learning of this, Castro warned that accessing employee accounts in the absence of a business purpose was grounds for termination. Regarding Vasquez's account, Sartipi testified Castro asked him to monitor the account because the compliance department discovered she was overdrafting and not properly managing her account. But Sartipi also admitted it was a mistake to access her account so often.

Travis formally terminated Sartipi for accessing employee account information without authorization or a justified purpose — Gutierrez's account once, Vasquez's account 14 times, and the other two women 12 and three times, respectively. In October 2021, Sartipi filed a complaint against Travis, alleging it violated FEHA by using his gender as a substantial factor

3

in his termination.[1]  In a deposition, a former employee — the one of which Sartipi allegedly had an explicit photo — testified she never had nude photos of herself, that Sartipi never accessed her phone and would not have found any nude photos, and she never had any personal, social or romantic relationship with him.

During his deposition, Sartipi admitted that he did not observe any discriminatory treatment in the human resources investigation or corrective action process.  Rather, he believed that Travis treated him differently than all other employees, male and female.  Others, for instance, were first given a documented, formal warning and then a final warning before being terminated.  But he also acknowledged being given a verbal warning regarding accessing employees' accounts.  And he further conceded employees could be immediately terminated in the absence of any formal termination process.  Notably, Travis had previously terminated a female employee for accessing a member's account information without permission or a legitimate business purpose.

In November 2024, Travis moved for summary judgment in the three consolidated cases.  The following month, and as discussed further below, Sartipi unsuccessfully sought an ex parte order to continue the hearing to accommodate, among other things, an appointment for counsel's necessary medical procedure, additional time for opposing the three summary judgment motions, and time for opposing Travis's two motions to disqualify counsel and for evidentiary sanctions.  While the trial court denied the motion to continue, it ultimately continued the hearing for three weeks to February 20,

---

[1] Castro and Chamberlain were also terminated and, represented by Sartipi's counsel, initiated separate lawsuits against Travis.  His counsel stipulated to consolidating those cases for "all purposes, including trial."

2025. Later, the court granted Travis's motion for summary judgment after concluding it terminated Sartipi for the legitimate reason of his improperly accessing member accounts, and that he failed to respond with substantial evidence raising a triable issue of pretext or gender discrimination.

## DISCUSSION

### I.

Sartipi contends the trial court erroneously granted Travis's motion for summary judgment. He argues he established a prima facie case of gender discrimination — that the two female human resources representatives developed a discriminatory animus against him because he is male and allegedly showed a subordinate employee an explicit photo of a female employee. He insists the proffered reason for his termination — improper access of employee member financial accounts — is false or a pretext for gender discrimination.

A trial court must grant summary judgment if the moving party shows there are no triable issues of material fact and it is entitled to judgment as a matter of law. (*Duffey v. Tender Heart Home Care Agency, LLC* (2019) 31 Cal.App.5th 232, 240–241; Code Civ. Proc., § 437c, subds. (a), (c), undesignated statutory references are to this code.) A defendant may show entitlement to summary judgment by demonstrating the plaintiff cannot establish one or more elements of the claim, or there is a complete defense. (§ 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.) Upon making this showing, the burden shifts to the plaintiff who must present evidence reflecting a triable issue of material fact — evidence that allows a "reasonable trier of fact to find the underlying fact in favor of the party opposing the motion." (*Aguilar*, at p. 850, fn. omitted; § 437c, subd. (p)(2).) We independently and liberally view "all the evidence set forth

5

in the moving and opposition papers in the light most favorable to the nonmoving party." (*Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 318; *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

FEHA prohibits an employer from discriminating against a "person in compensation or in terms, conditions, or privileges of employment" based on gender. (Gov. Code, § 12940, subd. (a).) To state a prima facie case of discrimination under FEHA, the plaintiff must demonstrate that he is a member of a protected class, he was competently performing in the position he held, he suffered an adverse employment action, and there is a causal link between his membership in the protected class and adverse action. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*); *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1247.) An employer moving for summary judgment on a FEHA claim must demonstrate either that the plaintiff cannot establish an element or there was a legitimate, nondiscriminatory reason for the adverse employment action. (*Avila*, at p. 1247.) The burden then shifts to the plaintiff, who must "attack the employer's proffered reasons as pretexts for discrimination" — to present evidence the decision was motivated in part by prohibited discrimination. (*Guz*, at p. 356; *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158–1159.) "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff," who must identify evidence "supporting a rational inference that intentional discrimination, on grounds prohibited by the statute, was the true cause of the employer's actions." (*Guz*, at pp. 356, 361, italics omitted.)

Viewing the evidence in the light most favorable to Sartipi, we discern no error in the trial court's decision. At the outset, we question whether Sartipi presented even the minimal evidence necessary to establish a prima

facie case of gender discrimination. (*Guz*, *supra*, 24 Cal.4th at pp. 354–355 [burden at prima facie stage is not onerous].) He points to evidence undermining the allegation that he showed an explicit photo to a subordinate employee — the former employee disavowed any possibility that Sartipi could have a nude photo of her. Human resources personnel, he speculates, then engaged in dogged efforts to terminate his employment. But the evidence demonstrates that investigators responded to an anonymous complaint regarding his conduct. Their investigation revealed allegations that he had shown an inappropriate picture to a subordinate employee — an allegation Sartipi acknowledged an employer must investigate — and accessed the personal financial accounts of current and former employees without permission. Critically, rather than alleging Travis treated him, as a male, differently than women, he complained that the cooperative treated him differently compared to other female *and* male employees. Other employees, he asserted, received documented, formal warnings followed by a final warning before termination. Indeed, he conceded that he did not observe any discriminatory treatment or impropriety in Travis's investigation or corrective action process.

Even assuming Sartipi satisfied this low burden, Travis presented undisputed evidence of its legitimate reason — unrelated to gender — for terminating his employment. (*Guz*, *supra*, 24 Cal.4th at p. 355.) Sartipi's data logs revealed he repeatedly accessed employee member accounts without permission and without a legitimate business purpose. Though he initially attempted to justify accessing Gutierrez's account to verify whether she was properly taking a sick day, he admitted that accessing the account without her permission was improper. His supervisor warned him that accessing employee accounts in the absence of a business purpose was grounds for

termination. But between September 2020 through July 2021, he accessed Gutierrez's account once, Vasquez's account 37 times, another woman's account 29 times, and the last woman's account six times. Travis thus determined Sartipi violated its confidentiality policy by repeatedly accessing employee account information without a business purpose, and it terminated his employment on that basis. Critically, it terminated a female employee in 2018 for similar reasons — accessing a member's account without a valid business reason. Thus, Travis demonstrated that it terminated Sartipi for a legitimate, nondiscriminatory reason. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 160.)

Sartipi failed to offer substantial evidence that this purported reason was untrue or pretextual, "such that a reasonable trier of fact could conclude [Travis] engaged in intentional discrimination." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004–1005.) He lists justifications for his accessing the employee member accounts — that Castro asked him to monitor Vasquez's account for money management issues, employees regularly ask branch managers to transact business in their accounts, and Castro believed the evidence presented insufficient grounds to terminate him.[2] This evidence, he argues, demonstrates " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

---

[2] Sartipi's failure to support these references to the record "by a citation to the volume and page number of the record where the matter appears" does not comply with court rules and stymies our ability to review his arguments. (Cal. Rules of Court, rule 8.204(a)(1)(C).) We are not " 'required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.' " (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) Counsel must refer us to the portion of the record supporting its contentions on appeal, otherwise we may treat them as forfeited. (*Ibid*.)

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence." ' " (*Hersant*, sat p. 1005, italics omitted.) But even if Travis lied about its reasons for terminating Sartipi's employment, an "inference of intentional discrimination cannot be drawn solely from evidence, if any," of that lie, contrary to Sartipi's suggestions. (*Guz*, *supra*, 24 Cal.4th at p. 360.) That Travis's "proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons." (*Id*. at p. 361.) But "there must be evidence supporting a rational inference that intentional discrimination, on grounds prohibited by the statute, was the true cause of the employer's actions." (*Ibid*., italics omitted.) Sartipi merely states Travis's human resources personnel had discriminatory animus toward him. This fails to demonstrate by "nonspeculative evidence, 'an actual causal link between prohibited motivation' " — gender discrimination — " 'and termination.' " (*Featherstone v. Southern California Permanente Medical Group*, *supra*, 10 Cal.App.5th at p. 1159.) In sum, the trial court properly granted Travis's motion for summary judgment.

## II.

Sartipi contends the trial court was required to continue the summary judgment hearing under section 437c, subdivision (h). He argues there were facts essential to opposing the motion but for identified reasons could not be presented to the court at that time. He further contends his counsel had an overwhelming amount of work and a scheduled surgery — both constituting good cause to continue the hearing. We disagree.

Sartipi deposed Michael Levy, Travis's general counsel, in August 2024. But Levy declined to answer several questions regarding his alleged

9

preparation of Sartipi's termination summary — to be filed by Castro — based on attorney-client and attorney work product privilege. Sartipi subsequently filed a motion to compel Levy to respond to certain deposition questions, arguing he waived any privilege by preparing the summary. The trial court set a hearing on the motion for January 30, 2025.

In November 2024, Sartipi moved ex parte to advance the hearing on the motion to compel so he could complete essential discovery to oppose any motions for summary judgment Travis might file. Shortly after, Travis moved for summary judgment against all three plaintiffs — which was also set for a hearing on January 30, 2025, the same day as the hearing for Sartipi's motion to compel. The trial court denied Sartipi's motion to advance the hearing on the motion to compel, explaining he had ample time to conduct discovery since the case was filed more than three years prior. In addition, the court noted, Sartipi took Levy's deposition in August 2024, yet he did not move to compel additional responses for another 10 weeks.

Towards the end of November, Travis moved for evidentiary sanctions and to disqualify Sartipi's counsel, and both were scheduled for a hearing on January 8, 2025. The next month, Sartipi moved ex parte to continue the summary judgment hearing, arguing facts might exist to support his opposition to the motion — conclusively stating "Levy is also a central witness to the termination[] of Plaintiff[] Sartipi" and pressuring Castro to terminate him. Counsel also complained Travis's motions for sanctions and disqualification diverted his attention from opposing the summary judgment motion, and he was unavailable in January 2025 due to a scheduled surgery. He also argued continuance was necessary because he had to postpone, but needed, depositions of additional Travis employees who were significant participants in the decision to terminate Sartipi's employment. The trial

10

court denied the motion after questioning counsel's diligence in conducting discovery and finding there was no good cause to continue either the trial or motion for summary judgment. Later, it nonetheless sua sponte continued the motion for summary judgment for three weeks — to February 20, 2025.

Section 437c, subdivision (h) allows continuing a summary judgment hearing if "facts essential to justify opposition may exist but cannot, for stated reasons, be presented." Generally, we review a ruling on a request for a section 437c, subdivision (h) continuance for an abuse of discretion. (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038.) But continuances under this provision are " ' "virtually mandated" ' " if the party makes a good faith showing the continuance is necessary to obtain facts essential for opposing the summary judgment motion. (*Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 Cal.App.4th 632, 643.) To demonstrate good faith, the party must show "(1) the facts to be obtained are essential to opposing the motion, (2) there is reason to believe such facts may exist, and (3) the reasons why additional time is needed to obtain these facts." (*Ibid.*)

No continuance was required here because Sartipi made no showing the deposition testimony was material to the dispute. (*Chavez v. 24 Hour Fitness USA, Inc.*, *supra*, 238 Cal.App.4th at p. 643.) As a preliminary matter, Sartipi failed to identify the facts the two additional Travis employees might provide or explain why they might be essential to establish that the reasons for his employment termination were pretextual. (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 532 [requiring " '[f]acts establishing *a likelihood that controverting evidence may exist*' "].) And although he suggests Levy was a witness to the decision to terminate his employment, he fails to explain how Levy's additional

11

testimony would provide essential insight into Travis's purported reasons for that decision.

Indeed, those facts were already presented. In his deposition testimony regarding a meeting to discuss Sartipi's termination, Levy stated that everyone agreed that his use of official Travis data about members, including subordinate or former employees, was unacceptable. He explained "there was no question that his access to the accounts was impermissible, and the volume of access to other peoples' accounts was unjustifiable" — an assessment with which everyone at the meeting agreed. A declaration by Castro already documented his opposition to terminating Sartipi based on the alleged explicit photo and accessing employee accounts. He noted his feeling pressured to terminate Sartipi based on the account access issues. To the extent Sartipi argues Levy's testimony was essential to disclose inconsistencies in the reason for terminating his employment, the record already reflects as much. More importantly, this did not provide critical evidence of gender discrimination. (*Guz*, *supra*, 24 Cal.4th at p. 361.)

Sartipi's argument that good cause nonetheless supported a continuance fares no better. If a continuance is not mandatory under section 437c, subdivision (h), courts must determine "whether the party requesting the continuance has nonetheless established good cause therefor." (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 716.) We review the court's decision for an abuse of discretion and find none here. (*Ibid*.) First, the trial court found counsel was dilatory in conducting discovery. (*Id*. at p. 718.) It noted Sartipi had ample time to conduct discovery since the case was filed three years prior, and he failed to move to compel Levy to answer deposition questions in a timely manner. Second, while an attorney's scheduled medical procedure may establish good cause for a continuance, Sartipi's counsel was

scheduled for surgery several months after the summary judgment motion was filed.  (*Ibid*.)  As Sartipi notes, any summary judgment opposition was due two days after the scheduled surgery.  Counsel had ample time to prepare an opposition in advance of the surgery.

Finally, we reject Sartipi's complaint that former section 437c's 75-day timeline for conducting discovery and fully responding to a motion for summary judgment was insufficient.  (Former § 437c, subd. (a)(2); Stats. 2024, ch. 99, § 1, eff. Jan. 1, 2025 [changing § 437c, subd. (a)(2) to allow a party to file motion for summary judgment at least 81 days before a hearing].)  Such complaints are better directed to the Legislature.  And in any event, the record reflects Sartipi's counsel filed an 11-page unsuccessful motion on December 30, 2024, with nearly 150 pages of exhibits seeking to disqualify the trial judge for alleged bias.  The hours spent on this motion could have been devoted to other litigation tasks, such as opposing Travis's motions for sanctions and disqualification of counsel — both of which Sartipi's counsel insisted it needed to address — and its summary judgment motion.

## DISPOSITION

The judgment is affirmed.  Travis is entitled to recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

13

_____

RODRÍGUEZ, J.

WE CONCUR:


_____

TUCHER, P. J.


_____

FUJISAKI, J.

A174709; *Sartipi v. Travis Credit Union*