Filed 5/27/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ROBERT INSALACO et al.,<br><br>    Plaintiffs, Cross-defendants<br>    and Appellants,<br><br>v.<br><br>HOPE LUTHERAN CHURCH OF<br>WEST CONTRA COSTA COUNTY,<br><br>    Defendant, Cross-defendant<br>    and Respondent;<br><br>MARY WONG et al.,<br><br>    Defendants, Cross-<br>    complainants and Appellants. | A156562<br><br>(Contra Costa County<br>Super. Ct. No. MSC17-00725) |

Plaintiffs Robert Insalaco and Leslie Lomax (the Insalacos) own property atop of a slope. At the bottom of the slope is a creek. Defendant Hope Lutheran Church (Church) owns property on the other side of the creek. After a landslide made their house uninhabitable, the Insalacos filed this action against, among others, the Church and several adjoining landowners, including Mary Wong and Lucas T. Du (the Du/Wongs). The Du/Wongs filed a cross-complaint, alleging tort causes of action related to the landslide and seeking indemnification. The Church successfully moved for summary judgment against the Insalacos and the Du/Wongs, and these appeals followed.

1

We now reverse.  As to the Insalacos, we conclude the trial court erred in denying their timely motion for a continuance under Code of Civil Procedure section 437c, subdivision (h)[1] to take additional discovery and oppose the summary judgment motion.  As to the Du/Wongs, we conclude that there were concededly material facts enumerated by the Church in its motion for summary judgment that were disputed, and it was thus error to grant summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Properties*

The Insalacos and the Du/Wongs own neighboring properties on Avenida Martinez in El Sobrante.  Wilkie Creek (the creek) runs behind both properties.  The Du/Wong property is downhill and to the west of the Insalaco property.

The Church owns property to the north and directly across the creek from the Insalaco and Du/Wong properties.  The Church property is generally flat with a large impervious surface area created by a large parking lot and other paved areas.  There are several buildings on the property, including the church building itself and a daycare center.  Surface water runoff from the parking lot and the buildings is captured in catch basins and transferred to an underground drainage pipe that discharges into the creek.

B.    *The Landslide*

January and February 2017 were marked by heavy rainfall in the Bay Area.  In February 2017, a landslide on the Insalaco property severely damaged their home, rendering it unlivable.  The landslide straddled the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

property line between the Insalacos and the Du/Wongs, and also resulted in damage to the Du/Wong property.

The exact date of the landslide is disputed, but all agree it occurred in February 2017. Although the cause of the landslide is contested, it is undisputed that there are two ways in which the water flow in a creek could destabilize a slope. The water could erode the toe of the slope, which would remove the buttressing effect of the soil at the toe.[2] Or, a sustained rise in the water level of a creek could increase the amount of water in the slope.

C.    *The Insalacos File Suit; The Du/Wongs Cross-Complain*

The Insalacos sued the Church, as well as several neighboring property owners on Avenida Martinez, including the Du/Wongs. The Insalacos alleged causes of action for nuisance, trespass, and diversion of surface waters, and sought declaratory relief. They alleged that water runoff from the Church caused the water in the creek to rise, which caused their backyard to flood. The flooding saturated the soil in the Insalacos' backyard, which in turn caused the landslide.

The Du/Wongs cross-complained against the Church, the Insalacos, and other neighboring property owners,[3] asserting causes of action for nuisance, negligence, trespass, equitable and comparative indemnification, and declaratory relief against all cross-defendants.

---

[2] The United States Geological Survey defines the "toe" as "the most distant" point from the "upper edge" of the slope. (Landslide Handbook—A Guide to Understanding Landslides (2008 Circular 1325) Appendix A, p. 63.)

[3] Some neighboring landowners filed additional cross-complaints seeking indemnification; these cross-complaints are not the subject of this appeal.

3

D.	*The Church's Motions for Summary Judgment*

On July 27, 2018, the Church moved for summary judgment against the Insalacos and the Du/Wongs. In support, the Church relied on declarations from two retained experts: Jeff Raines, a registered civil and geotechnical engineer; and James Ulrick, a certified hydrogeologist.

1.	*Raines Declaration*

Raines inspected the Church property and the Insalaco property on four occasions: July 26, October 19, and October 27, 2017, and March 1, 2018. He inspected the Du/Wong property once on October 27, 2017.

Raines inspected the Insalaco property during a rainstorm on March 1, 2018, which he opined was similar to the rainfall during the February 7, 2017 landslide. Raines based this conclusion on rainfall data collected from a weather station in Concord, which he stated was the closest weather station to El Sobrante.

According to Raines's observations of the storm on March 1, 2018, the creek rose approximately six inches during heavy periods of rainfall but, once the rainfall let up, returned to its original level in about 15 minutes. Raines opined that one hour of heavy rainfall was not enough time for water to infiltrate into the soil and reduce the stability of the slope.

From his site visits, Raines concluded that the creek's channel was stable with no signs of recent erosion. The south bank of the creek (the Insalacos' side) was armored with large rocks that were stable with no signs of recent erosion or displacement. Raines found no evidence that water in the creek overflowed its banks and rose above the bottom of the slope.

Raines opined that the Church's contribution to the water level had no effect on the Insalaco property because the surface water runoff from the Church parking lot enters the creek from a drainage pipe located downstream

4

of the Insalaco property. Raines further stated the Church property had a drainage area of 2.657 acres, which represented 0.3 percent of the 856-acre watershed area upstream from the Church. In his opinion, the Church's contribution to the water level and flow of the creek was thus "insignificant."

Based on his inspection, Raines concluded that the Insalaco roof drain system routed all of the roof water into one concentrated area, which contributed to the soil destabilization. He also believed that any precipitation on the Insalacos' unpaved driveway would infiltrate the ground and migrate into the soil beneath the house and the affected area.

Raines concluded that the primary cause of the landslide was heavy rainfall that was exacerbated by the Insalacos' roof drainage system.

2.      *Ulrick Declaration*

Ulrick inspected the Church property, the Insalaco property, and the Du/Wong property on June 30, July 26, and October 27, 2017. Ulrick found no evidence of recent erosion of the creek banks. He opined that the flow in the creek did not affect the groundwater levels in the hill slope behind the Insalacos' house or cause the landslide. Rather, he believed that "[s]ources of water into the soil within or upslope from the landslide[,]" including the concentrated discharge from the Insalacos' roof downspouts and surface water drainage system, were likely causes of the soil failure.

According to Ulrick, all "altered drainage" from the Church property entered the creek downstream of the Insalaco property. As such, the runoff from the Church had no effect on the Insalaco property. In addition, the Church's contribution to the water level and flow in the creek was insignificant because the Church property drainage area of 2.657 acres represents just 0.3 percent of the 856-acre watershed drainage area upstream from the Church.

5

E.    *Request for Continuance of Summary Judgment Hearing*

On September 17, 2018, the Insalacos, joined by the Du/Wongs, filed an ex parte application under section 437c, subdivision (h) to continue the summary judgment hearing to obtain a site inspection of the Church property in advance of the depositions of the Church's two expert witnesses (Raines and Ulrick).

The Insalacos' application for continuance stated that no trial date had been set, no depositions had been taken, and that, other than the summary judgment hearing set for October 26, 2018, the only other pending court date was a case management conference.  As such, there was no reason to expedite the motions for summary judgment at the expense of allowing the nonmoving parties to conduct a site inspection before they took the depositions of Raines and Ulrick.

The Insalacos submitted a memorandum of points and authorities supported by a detailed declaration from their attorney.  The Insalacos advised the court that the depositions of Raines and Ulrick were set to commence that week.  However, a site inspection was necessary to fully explore and refute the opinions that Raines and Ulrick had set forth in their respective declarations.  The Insalacos identified four reasons: First, the topography of the Church property—specifically, the contours, slope, and other features of the land—needed to be mapped before an accurate determination could be made regarding the flow of water on and from the Church property.  Second, a site inspection was needed to verify the exact location of the water outlet from the Church property into the creek.  Third, an inspection of the creek bed from the Church's side of the creek was necessary to assess the validity of the claim that there was no evidence of erosion.  Fourth, the opposing parties' experts needed to perform water

6

testing to determine the path of the runoff water from the Church property and to determine if there were additional outlets for water other than the downstream outlet identified by Raines and Ulrick.

The Church's sole argument against the continuance was that the Insalacos had been dilatory in prosecuting their case; as the Church put it in a heading, "plaintiffs' own delay warrants denial of a continuance." The Church took the position that the lawsuit was filed in April 2017, but the Insalacos had only sought a site inspection the week before filing the request for continuance. Nonetheless, the Church stated that in the event the court was inclined to grant a continuance, it should be "a very short one," proposing that the Insalacos conduct a property inspection and take the two depositions "within the next 30 days."

The trial court denied the ex parte application the same day. There is no written order.

F.      *Oppositions to Motions for Summary Judgment*

        1.      *The Insalacos' Opposition*

The Insalacos, having been denied a continuance, took the depositions of the Church's expert witnesses and filed an opposition to the motion. (The opposition did not mention the recently denied request for continuance.) In their opposition they argued, among other things, that the Church's expert declarations should be stricken because the Church had failed to produce all documents pertaining to the experts, the declarations lacked foundation, and they were based on impermissible speculation. The Insalacos also argued there were triable issues of fact regarding the cause of the landslide.

In opposition to the motion, the Insalacos submitted a declaration from Douglas Flett, a professional engineer with 55 years of experience in civil

7

engineering. Flett believed that the facts relied on by Raines and Ulrick did not support their opinions.

Briefly, it was Flett's view that the experts relied on the wrong date for the landslide and that comparing rainfall on that erroneous date to a storm on March 1, 2018 was irrelevant. What is more, the rainfall data relied on by the experts (from a weather station in Concord) was inappropriate because the weather station closest to El Sobrante was Point Richmond.

Further, although Raines stated that the Church's surface water run-off outlet point was entirely downstream of the Insalaco property, Raines failed to state what, if anything, he did to verify that there were no other outlets for surface water runoff. Flett opined that without being able to inspect the site and conduct water testing of the Church property it was "impossible [for him] to state with reasonable certainty" that surface-water run off was not going into the creek from any other point or points other than the drainage point mentioned in Raines's declaration.

Flett also opined that Raines and Ulrick provided no data to support their conclusions that the Insalacos' downspouts and water runoff infiltrated the backyard slope and caused the landslide. Further, Flett stated there was no scientific or technical basis to support the Church experts' opinion that the water runoff from the Church was an insignificant factor in causing the instability of the slope because it purportedly comprised only 0.3 percent of the creek's upstream watershed.

2. *The Du/Wongs' Opposition*

The Du/Wongs opposed the motion for summary judgment on multiple grounds. They argued that the Church failed to meet its burden of production because it had not established that the Du/Wong property was unaffected by the water drainage from the Church. The Du/Wongs pointed

8

out that in its separate statement of undisputed facts, the Church focused almost exclusively on the Insalaco property; the only reference to the Du/Wong property was to identify its location across the creek from the Church property.

The Du/Wongs also argued that there were numerous triable issues of disputed material fact, including the water level in the creek, the existence of creek bank erosion, the actual amount of rainfall, and the location of the Church's drainage pipe and its effect on the Du/Wong property. With respect to the water level in the creek, the Du/Wongs disputed Raines's contention that there was no evidence the creek had overflowed its banks. The Du/Wongs submitted declarations with their own observations about the water level in January 2017. Ms. Wong saw the creek was running high; she became concerned and took a photograph. Mr. Du stated in a declaration that he saw the creek was "running high" and observed that the creek "had reached the bottom of the fence" between his property and the Insalaco property.

The Du/Wongs also observed erosion of the creek embankment on their property following the landslide. They submitted a declaration from Ken Ferrone, a geotechnical engineer with 32 years of experience, who personally observed erosion of the creek embankment on the Du/Wong side of the creek. This was contrary to Raines and Ulrick, who found no such erosion, a fact they both relied on in concluding that the channel of the creek was stable.

The Du/Wongs challenged the accuracy of Raines's rainfall study. Ferrone opined the rainfall study was flawed because it was limited in scope and conducted at an improper location. Raines should have considered the amount of rainfall over a period of several months, instead of for just one day. The study also should have been conducted at the Richmond weather

9

station—the closest station to the properties—which would have provided the most accurate and reliable representation of the rainfall at the properties, instead of at the Concord station, which was more than 20 miles away. The rainfall records from the Richmond station on February 7, 2017, indicate that Richmond received 2.42 inches of rain, more than twice the one inch of rain recorded at the Concord station on this date.

Another disputed fact was the location of the Church's drainage pipe and its effect on the Du/Wong property. Raines and Ulrick opined that the discharge from the drainage pipe would have no effect on the Insalaco property because it was located downstream of the Insalaco property. But neither Raines nor Ulrick offered any analysis of the effect on the Du/Wong property, which was downhill from the Insalaco property.

Based on his review of the plans for the discharge pipe provided by the Church, Ferrone believed water exiting the drainage pipe was aimed directly at the creek embankment on the Du/Wong property. Ferrone opined that the water from the discharge pipe contributed to the erosion, weakened the toe of the slope on the Du/Wong property, and contributed to the landslide.

G.   *Summary Judgment Hearing and Ruling*

Prior to the hearing, the trial court issued a 12-page tentative ruling granting summary judgment against the Insalacos and the Du/Wongs. In its tentative ruling, the trial court noted that the Insalacos had failed to request a continuance to conduct further discovery, which could have helped their case.[4]

---

[4] The reference to a continuance in the tentative ruling arose in the context of the Insalacos' argument in their opposition to the motion for summary judgment that although the Church had in effect designated Raines and Ulrick as their expert witnesses, it refused to provide all reports and correspondence those witnesses exchanged with the Church's counsel, raising the possibility that critical facts might be withheld that would make the

At the hearing on the summary judgment motion, counsel for the Insalacos reminded the court that the Insalacos, about two months prior, had in fact requested a continuance by ex parte application. The Insalacos' counsel then read portions of the attorney declaration that they had previously submitted in support of the ex parte application for continuance. The trial court stated that it had "no independent recollection" of the ex parte application; remarking that "I either granted it or denied it." The court was critical of the Insalacos for not apprising it of the need for a continuance in their opposition brief. Counsel explained that the Insalacos did not seek another continuance because it seemed futile to seek the same remedy based on the same grounds that had been denied just two months earlier.

The trial court responded at the hearing that even if it "got it wrong in September[,]" it did not "quite get what the problem [was] with inspecting the property. Anybody who's out taking a Sunday morning walk in this neighborhood can walk across the church's property, and all your clients need to do is to get a long stick and move the foliage across the creek." At this point, the Insalacos' counsel reminded the court that the Church specifically refused access to its property to conduct a site inspection.

_____

Insalacos unable to defeat summary judgment. The court in its tentative ruling (and in its order granting summary judgment), expressed "some concern with the conduct of HLC's counsel" in this regard, but went on to note: "Insalaco/Lomax's objections might have serious bite if they were presented as a request for further discovery under Code of Civil Procedure § 437c(h). Insalaco/Lomax, however, have not chosen that route. They neither request any such discovery, nor specify what discovery they wish to take, nor ask for any delay in decision of this motion while they take it. They have opted for an all-or-nothing tactic instead, seeking simply to exclude these experts' declarations in their entirety for lack of proper disclosure and discovery."

11

Counsel for the Church responded that the Insalacos had requested to conduct a site inspection on October 24, 2018, a weekday, which the Church would not permit because it operated a childcare center on the property. Counsel for the Church reported that it had offered to permit inspection on a subsequent Saturday, but by that point the Insalacos determined the issue became a "moot point" for the summary judgment proceedings.[5]

For their part, the Du/Wongs' counsel challenged the tentative ruling for failing to address whether the Church met its initial burden as to the Du/Wongs, again noting that the only fact in the Church's separate statement regarding the Du/Wongs was that they are downhill neighbors to the Insalacos. The court expressed its view that "nothing the church did was responsible for causing the slide, whether the slide went on one property or two."

Counsel for the Du/Wongs also argued that there were numerous disputed material facts that precluded summary judgment, including the water level in the creek, the existence of creek bank erosion, the actual amount of rainfall, and the location of the Church's drainage pipe and its effect on the Du/Wong property.

At the close of the hearing, the trial court adopted its tentative ruling without modification. Judgment was entered in favor of the Church against the Insalacos and the Du/Wongs.

## DISCUSSION

In Part I, we discuss the Insalacos' argument that the trial court erred in denying their motion for continuance. Because we agree, we do not

---

[5] Presumably, the Insalacos' counsel was referring to the fact that "a Saturday" inspection would have occurred after the scheduled summary judgment hearing set for Friday, October 26, 2018, and the request for continuance at that point had been denied.

address the Insalacos' other grounds for appeal.  In Part II, we address the Du/Wongs' argument that summary judgment was improper as to them on the merits.

I.

The Insalacos requested a continuance of the summary judgment hearing pursuant to section 437c, subdivision (h),[6] on the ground that they needed to conduct additional discovery—specifically a site inspection—to adequately refute the opinions of the Church's experts.

As we have discussed, the request was supported by a detailed attorney declaration, identifying the specific reasons why the Insalacos needed a site inspection of the Church property.  The Church did not contest the validity of the requested discovery but argued only that the Insalacos had been dilatory in prosecuting their case and failed to explain why they had not conducted the requested discovery sooner.

A leading practical treatise summarizes section 437c, subdivision (h) this way:  "[A] continuance (normally a matter within the court's discretion) is *'virtually mandated'* where the nonmoving party makes the requisite showing.  The party need not show that essential evidence *does* exist, but only that it *may* exist.  [*Dee v. Vintage Petroleum Inc.* (2003) 106 Cal.App.4th 30, 34 (emphasis added; internal quotes omitted); *Frazee v. Seely* (2002) 95 Cal.App.4th 627, 634.]"  (Weil et al., Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2019) ¶ 10.207, p. 10-87.)  We review a trial

---

[6] Section 437c, subdivision (h) provides in pertinent part that it if it appears from "the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just."

court's decision on a continuance under the abuse of discretion standard. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100.)

Preliminarily, we dispense with the Church's argument that the Insalacos have failed to provide an adequate record to support their claim of error because they failed to submit a transcript or other document memorializing the trial court's ruling on their ex parte request. This argument ignores that trial courts can, and often do, rule on ex parte applications without a formal hearing. (See § 166, subd. (a)(1); Weil et al., Cal. Practice Guide: Civil Procedure Before Trial, *supra,* at ¶ 9:370.8, p. 9(1)-166.) That may have occurred here, where section 437c, subdivision (h) contemplates that a continuance may be obtained by an ex parte application, and the register of actions reflects only that the ex parte application was denied.

In any event, none of the cases cited by the Church in an attempt to avoid appellate review of this important issue involve denying review of an ex parte application under section 437c, subdivision (h) for failure to provide a reporter's transcript. (See, e.g., *Rhule v. WaveFront Technology, Inc.* (2017) 8 Cal.App.5th 1223, 1228-1229 [failure to provide reporter's transcript precluded challenge to award of attorney fees as part of discovery sanctions]; *Jameson v. Desta* (2018) 5 Cal.5th 594, 623-625 [failure to provide court reporter at trial]; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [review not possible of motion to strike where appellant did not even provide the motion itself, opposition and trial court order].) Further, the Insalacos have provided their moving papers, the declaration from their attorney, and the Church's opposition. (Cf. *Rhule, supra*, 8 Cal.App.5th at p. 1229, fn. 5 ["This is not a case where the trial court's rulings (or other materials in the record) sufficiently illuminate the factual

and legal predicate for the trial court's orders"].)  The facts underlying the motion for continuance are not in dispute.

We now turn to the merits of the denial for continuance.  We have no difficulty concluding the Insalacos met the requirements of section 437c, subdivision (h).

"The purpose of the affidavit required by . . . section 437c, subdivision (h) is to inform the court of outstanding discovery which is necessary to resist the summary judgment motion.  [Citations.]"  (*Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 325-326.)  However, it "is not sufficient under the statute merely to indicate further discovery or investigation is contemplated.  The statute makes it a condition that the party moving for a continuance show 'facts essential to justify opposition may exist.' "  (*Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 548.)

The Insalacos presented a detailed declaration from their attorney explaining the particular facts essential to opposing the motion that may exist but could not then be presented.  As we have described, the declaration could not have been more clear:  1) the topography of the Church's property needed to be mapped before an accurate determination could be made regarding the flow of water on and from the Church's property; 2) a site inspection was needed to verify the exact location of the water outlet from the Church property into the creek; 3) an inspection from the Church's side of the creek was necessary to assess the validity of the claim that there was no evidence of erosion; and 4) water testing was required to determine the path of the runoff water from the Church property and to determine if there were additional outlets for water other than the one identified by Raines and Ulrick.

15

The Church does not dispute the relevancy of the requested information or otherwise challenge the adequacy of the Insalacos' attorney declaration.[7] Instead, the Church focuses solely on the Insalacos' alleged delay in seeking this information. The Church argues that the Insalacos were not entitled to a continuance due to their lack of diligence in conducting discovery. But the cases cited by the Church in support of this conclusion are completely distinguishable.

For example, in *A&B Painting and Drywall, Inc. v. Superior Court* (1994) 25 Cal.App.4th 349, 356-357, not only was there no statement in the declaration suggesting what facts might exist to support an opposition to the summary judgment motion, it was not even clear whether the party was actually making a request for a continuance; the declaration merely stated that no depositions had been conducted. In *Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 251, the untimely affidavit failed even to "make a good faith showing as to what facts essential to oppose summary judgment may have existed." In *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1036-1038 and footnote 7, the party seeking the continuance filed a speculative declaration that did not comply with section 437c, subdivision (h) about the testimony of a potential witness the party had not even located. The party then failed to move to compel, as he had indicated in the declaration he would. (*Id.* at p.

---

[7] Indeed, as we have shown, the Church's experts inspected the Church property and the Insalaco property multiple times, a fact which the trial court emphasized in its order granting summary judgment: "But Raines and Ulrick both actually inspected the scene several times, including at least once during a heavy rainfall. There is no reason to doubt that they correctly identify the location of the outfall." And the fact that Flett did not make a site visit is implicitly criticized by the court: "At most, Flett says you can't see the outfall pipe from the opposite side of the creek due to foliage. But he does not claim that he crossed the creek to look under the foliage . . . ."

1039.)  On the day of the summary judgment hearing, the party announced that he had found the witness the night before.  (*Ibid.*)  These cases bear no resemblance to the appeal before us.

"When a lack of diligence results in a party's having insufficient information to know if facts essential to justify opposition may exist, and the party is therefore unable to provide the requisite affidavit under . . . section 437c, subdivision (h), the trial judge may deny the request for continuance of the motion.  (See, e.g., *Mahoney v. Southland Mental Health Associates Medical Group* (1990) 223 Cal.App.3d 167, 170 [continuance denied for failure to present an affidavit]; *Danieley v. Goldmine Ski Associates, Inc.* (1990) 218 Cal.App.3d 111, 127-129 [same].)  But when a party submits an affidavit demonstrating that facts essential to justify opposition may exist but have not been presented to the court because the party has not been diligent in searching for the facts through discovery, the court's discretion to deny a continuance is strictly limited.  (Cf. *Mary Morgan, Inc. v. Melzark* [(1996)] 49 Cal.App.4th [765,] 770-771.)"  (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398 (*Bahl*).)

Here, the Insalacos did not merely make a generic discovery request as a reason to continue the summary judgment hearing.  Instead, they provided a declaration requesting specific discovery—a site inspection—to establish the location and sources of the drainage outfall, which were disputed facts that were of critical importance in opposing summary judgment.  The Insalacos' declaration followed the statutory mandate to the letter.  Thus, even if the Insalacos should have sought to arrange for a site inspection at an earlier point in this litigation, where, as here, counsel states with particularity the necessary discovery, "the policy favoring disposition on the

17

merits outweighs the competing policy favoring judicial efficiency. [Citation.]" (*Bahl, supra,* 89 Cal.App.4th at pp. 399-400.)

This point is underscored by other important factors that militated in favor of a continuance in this case. No trial date had been set and discovery remained open. No prior continuances had been sought or granted. (See *Chavez v. 24 Hour Fitness, USA, Inc.* (2015) 238 Cal.App.4th 632, 644.) And, most importantly, the requested site inspection plainly was essential to the Insalacos' opposition. The Church in effect conceded as much in its initial opposition to the motion, never once arguing that a site inspection was irrelevant.

On this record, we conclude that the continuance was virtually mandated and thus that the trial court exceeded the bounds of its discretion in denying the Insalacos' request for a continuance.

Because we conclude that the trial court erred in denying the Insalacos' request for a continuance, we vacate the judgment as to them. Therefore, we do not reach any of the Insalacos' other arguments.

II.

In their appeal, the Du/Wongs argue that the trial court erroneously granted summary judgment because the Church failed to meet its burden, and its separate statement includes disputed material facts.

For a defendant to prevail on a motion for summary judgment, it must show at least one element of a plaintiff's cause of action cannot be established, or the defendant has an affirmative defense. (§ 437c, subd. (*o*); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.) We review de novo the trial court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party. (*Saelzler v. Advanced Group*

18

*400* (2001) 25 Cal.4th 763, 768; *Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52.)

The Du/Wongs' direct causes of action included negligence, nuisance, and trespass. The gravamen of the Du/Wongs' claims is that drainage from the Church property caused damage to the Du/Wong property, which is downhill of the Insalaco property. The Du/Wongs contend that in its motion for summary judgment, the Church did not address the Du/Wong property at all. Instead, the Church's argument and supporting evidence are confined to the effect of its downstream outlet on the Insalaco property. The sole reference to the Du/Wongs in the Church's separate statement is that their property is located across the creek from the Church. The Du/Wongs contend that this was insufficient to satisfy the Church's initial burden as to the Du/Wongs' causes of action.

But we need not decide whether the Church met its initial burden because even if they did, there is another fundamental problem. As the Du/Wongs contend, the Church enumerated purportedly undisputed material facts in its separate statement, some of which the Du/Wongs disputed. As to some of them, the Church's rejoinder is that those facts are actually "not material." As we discuss, this defeats summary judgment.

As we explained in *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 252, the moving party should " '[i]nclude only those facts which are *truly material* to the claims or defenses involved because the separate statement effectively *concedes* the materiality of whatever facts are included. Thus, if a triable issue is raised as to any of the facts in your separate statement, the motion must be denied!' (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) [¶] 10:95.1, p. 10–35.)"

19

That must be the result here. For example, the Church placed at issue how much rain fell on the date of the incident, and stated in its separate statement that "[a] heavy rainfall such as occurred on the date of the incident would not be enough to cause the Wilkie Creek flow to infiltrate into the hill slope so as to reduce slope stability on Plaintiffs' [Insalacos] property." The Church relied on Raines's declaration as to the amount of rainfall on the day of the incident, but the Du/Wongs disputed it as an underestimation. On appeal, the Church contends that "[e]ven if a dispute exists about the amount of rainfall around the site of the landslide, that dispute is immaterial." The Church cannot have it both ways.

Similarly, the Church stated as an undisputed material fact that there are "two ways in which water flow in a creek could destabilize a slope." The water could erode the toe of the slope; "[o]r, a sustained rise in the water level in the creek could increase the amount of water in the slope." The Du/Wongs did not dispute this statement, and came forward with evidence that, contrary to the opinions of the Church's experts, the creek had overflowed its banks one month before the landslide.[8] As they argued in the trial court, the Church contends on appeal that even if the Du/Wongs had witnesses who observed the creek overflow, that would "not create a triable issue of material fact" and that the "materiality of whether the creek ever overflowed its banks cannot be established."

Yet another example is the Church's statement of undisputed fact

_____

[8] At one point on appeal, the Church questions whether the Du/Wongs presented evidence that the creek had overflowed its banks. Mr. Du saw the creek was "running high" and observed that the creek "had reached the bottom of the fence" between his property and the Insalaco property. Presumably, in order for the water to reach the fence between the two properties, it would have had to overflow its banks.

that "[t]he channel of Wilkie Creek is stable and shows no evidence of recent erosion." This is part of the Church's argument that it was not a substantial factor in causing the landslide. But when the Du/Wongs came forward with evidence of the erosion at the creek bank on their property at the time of the landslide, the Church attempted to back away. Indeed, a subheading from their brief on appeal is that "[t]he creek embankment erosion is not material."

Because a dispute as to any one of these facts means there was a dispute as to a concededly material fact, the trial court erred in granting summary judgment.

## DISPOSITION

The judgment against the Insalacos and the Du/Wongs is vacated. The matter is remanded for further proceedings consistent with this opinion. The Insalacos and the Du/Wongs shall recover their respective costs on appeal.

_____
Miller J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A156562, *Insalaco v. Hope Lutheran Church of West Contra Costa County*

22

Trial Court: Superior Court of Contra Costa County


Trial Judge: Hon. Charles S. Treat


Hirsh Closson; Clifford Hirsch, Barrett B. Braun
Demler, Armstrong & Rowland, LLP; John R. Brydon, James V. Weixel, for Plaintiffs, Cross-defendants and Appellants Robert Insalaco and Leslie Lomax

Clark Hill LLP; Elizabeth A. England, Thomas W. Chaffee, David M. Perl for Defendants, Cross-complainants and Appellants Lucas T. Du and Mary Wong

Lewis Brisbois Bisgaard & Smith LLP; Jeffrey A. Miller, Lann G. McIntyre, David E. Russo, Christopher J. Nevis for Defendant, Cross-defendant and Respondent

A156562, *Insalaco v. Hope Lutheran Church of West Contra Costa County*