Filed 5/31/22  Sun v. The Permanente Medical Group, Inc. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ZHIXUN SUN SAMUEL,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>THE PERMANENTE MEDICAL GROUP, INC.,<br><br>  Defendant and Respondent. | H045278<br>(Santa Clara County<br>  Super. Ct. No. 2015-1-CV-284209) |

Plaintiff Zhixun Sun Samuel (Sun) brought this action against his former employer, defendant The Permanente Medical Group, Inc. (TPMG), for age discrimination, national origin discrimination, retaliation against whistleblowing, wrongful termination in violation of the California Family Rights Act (CFRA), wrongful termination in violation of public policy, breach of the covenant of good faith and fair dealing, and punitive damages.  The trial court granted TPMG's motion for summary adjudication, and entered judgment in TPMG's favor, denying Sun's request to continue the hearing on the summary judgment motion, and denying Sun's motion to compel further discovery responses.  Sun appeals.  We affirm.

## I.  PROCEDURAL ISSUES

We commence by addressing certain preliminary procedural issues.  TPMG asks this court to affirm the trial court's orders based on Sun's failure to comply with the procedural requirements for briefing.  We decline TPMG's invitation.  Sun represents

himself in this appeal, as he did at the trial court.  As a party representing himself, Sun " 'is entitled to the same, but no greater, consideration than other litigants and attorneys.' [Citations.]  Accordingly, we may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record [citation].  [Fn. omitted.]  We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory [citation]. . . .  [W]e will bear in mind that an ' "order of the lower court is presumed correct." '  [Citation.]  Therefore, [the appellant] has the burden of affirmatively showing any error.  [Citation.]" (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520, rehg. den. (June 18, 2019), review den. (Aug. 21, 2019) (*Tanguilig*).)  However, consistent with ethical considerations related to the treatment of individuals without counsel, the liberal construction of pleadings is a reasonable accommodation the court can make to a self-represented litigant, and we will do so here.  (Cal. Judges. Assn., Jud. Ethics Com., Opn. No. 76 (2018) at pp. 1, 9 <https://www.caljudges.org/docs/Ethics%20Opinions/Op%2076%20Final.pdf> [as of May 27, 2022], archived at: <https://perma.cc/AZR4-Q9LN>.)

In his appellant's opening brief, Sun provides a statement of facts without citing to the record he designated—a 494-page Clerk's Transcript.  Instead, he cites several exhibits purportedly presented to the trial court, which he later moved this court to consider as part of the record on appeal, a request we granted.  Sun waited until filing his reply brief to make a second motion to augment the record with five additional exhibits. We deny this motion.  Sun has not proffered any excuse for his delay in seeking to augment or correct the record with these exhibits.  (See *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 827, fn. 1.)  Moreover, he has not provided any evidence that the documents attached to the motion were before the trial court when it ruled on TPMG's motion for summary judgment, or Sun's motions to compel further responses and for a continuance.  (*Vons Companies, Inc. v. Seabest*

*Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) As the exhibits attached to his January 21, 2020 motion to augment are not considered part of the record on appeal, we will also disregard factual contentions made in Sun's appellant's reply brief that are supported by citation to those exhibits. (*Tanguilig*, *supra*, 36 Cal.App.5th at p. 520.)

While we will exercise our discretion to construe Sun's brief liberally in an effort to determine the nature of Sun's complaints, we decline to search the portions of record not cited by Sun in his appellant's opening brief to determine if they support his contentions on appeal. (See *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.) We will also disregard legal arguments that are conclusory or not supported by citations to legal authority. (*Tanguilig*, *supra*, 36 Cal.App.5th at p. 520.) With these caveats, we turn to the merits of Sun's appeal.

## II. BACKGROUND

### A. *Undisputed Facts*

We primarily base our factual summary on TPMG's separate statement of undisputed material facts and the evidence submitted with that statement below. The Code of Civil Procedure requires summary judgment opposition papers to "include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed," and to include "a reference to the supporting evidence" where a fact is disputed. (Code Civ. Proc., § 437c, subd. (b)(3).) To the extent Sun provided such a separate statement in response to TPMG's motion for summary judgment, he did not designate that statement as part of the record on appeal, in either the notice designating the record on appeal that he filed in the trial court, or in the two requests he made to this court to augment the record. This court granted an unopposed motion to augment the record with 20 exhibits Sun purportedly provided to the trial court in opposition to the

3

motion for summary judgment.[1]  We have reviewed those exhibits as cited by Sun in his appellant's opening brief.  However, where Sun contends on appeal that a fact is disputed, but has failed to cite any evidence in the record supporting the existence of a dispute, we treat those facts as undisputed.

*1. Sun's Employment History Prior to October 2014*

Sun worked for TPMG from 2007-2014; his employment was governed by TPMG policies and a collective bargaining agreement (CBA).[2]  Sun received training on TPMG's policies regarding harassment, discrimination, and retaliation.  Sun was 54 years old when he was hired at TPMG; his supervisor, Julie Hsu, was over 60 years old and remained employed by TPMG at the time relevant to this case.

Sun worked as a Sonographer II, performing echocardiogram studies in inpatient and outpatient settings.  His job required that he not only take quality images, but also communicate effectively with patients, family members, and coworkers.  During his employment, Sun received annual evaluations conducted by manager Robert Jackson.  While Sun received praise for his technical skills, he was warned on several occasions beginning in 2008 that he needed to improve his communication skills.

By December 2012, Jackson continued to report deficiencies in Sun's communication skills.  Sun's rating in the "Member/Patient Interaction and Customer

[1] TPMG objected to the trial court considering these exhibits in ruling on the motion for summary judgment.  There is no evidence in the record that the trial court ruled on these objections.  While the trial court's failure to rule on objections preserves the objections for appeal (Code Civ. Proc., § 437c, subd. (q)), TPMG does not, in its respondent's brief, object to this court considering the exhibits on this basis.  Because the trial court did not rule on TPMG's objections, we consider the exhibits in determining whether Sun has met his burden on appeal.  (*LPP Mortgage, Ltd. v. Bizar* (2005) 126 Cal.App.4th 773, 777.)

[2] It is unclear whether the trial court had a copy of the CBA at the time it ruled on the motion for summary judgment.  In his second motion to augment, Sun suggests the documents attached thereto, including the CBA, were part of a motion for reconsideration.  As discussed at footnote 6, *post*, Sun's motion for reconsideration was a post-judgment motion and is not properly part of this appeal.

4

Service" category of "Displays Courtesy and Compassion to Customers" went from "Meets" in 2011 to "Needs Improvement" in 2012. Although technically proficient, Jackson noted that Sun's "deficiencies in the area of communication are creating issues. . . . [Sun] must work to create a positive, friendly, caring perception. . . . His closed, reticent and laconic style does not convey that impression, but quite the opposite and patients and staff have commented unfavorably about this to management."

In a July 2014 review, Jackson rated Sun as "does not meet" in the member/patient interaction categories of "displays courtesy and compassion to customers," and "listens and responds promptly to customers," noting that Sun "shows a lack of attentiveness to customer needs."[3] Jackson also rated Sun "does not meet" in "Quality and Performance Improvement" and "Professional Responsibility," pertaining to his ability to follow instructions and respond to management direction. Sun was rated "needs improvement" in areas of "Cooperation and Teamwork," "Communication and Documentation," and "Safety, Security and Infection Control." Jackson gave Sun an overall rating of "needs improvement," indicating that Sun had a "constant and consistent pattern of complaints" related to his communication skills, despite management "constantly and consistently urg[ing] him to improve" those skills. Jackson confirmed that Sun had been made aware that his performance regarding communication was unacceptable.

TPMG produced evidence of several complaints about Sun during his employment. In 2011, Sun received coaching from management and two written warnings based on patient complaints concerning the way Sun conducted ultrasounds. In the July 2014 performance review, Jackson reported a "near continuous stream of complaints from patients and staff throughout [Sun's] tenure with [TPMG]." Sun

---

[3] On appeal, Sun contends that he did not receive a review in July 2014, and did not receive the subject document until April 2016. Sun does not cite any evidence in the record to support this contention. Nor does he cite to evidence in the record indicating that he raised this objection to the trial court.

5

received two written warnings in 2012 and 2013 for leaving patient bedrails down or at an unsafe height. He was suspended in October 2013 as a result of his care of a neonatal patient, and again in August 2014 for being a "no call/non-show." TPMG notified Sun that failure to sustain acceptable performance and attendance in the future would likely result in termination.

### 2. *Sun's Employment History in October 2014*

On October 1, 2014, Sun attended a meeting to introduce a new manager, Melanie Londono, at which he raised objections to prior discipline he had received and addressed negative experiences he had at TPMG. When informed that the meeting was not an appropriate time to discuss such issues, Sun persisted. Londono asked Sun to remain after dismissing the rest of the staff from the meeting, but he left. Several employees reported feeling uncomfortable because of the meeting, although Sun testified that he was not angry or irritated during the meeting.

Approximately a week later, Sun and his union representative met with TPMG management to investigate his recent conduct. Sun acknowledged that he understood management's direction at the October 1, 2014 meeting, but continued to express dissatisfaction with a nurse questioning his treatment of patients. Sun's supervisor, Hsu, attended the meeting to provide "language support" for Sun. She "ask[ed] the group to consider that Mr. Sun was a valuable worker, and his wife needed surgery soon." At the end of the meeting, Sun was placed on paid administrative leave and instructed not to enter the facility except to receive medical care for himself or a family member, or to visit the pharmacy. Sun was also told he needed to be available to meet with management during his leave; Sun asked if he could go to Los Angeles while on leave, and was informed he needed to be available to meet with management during his normal shift hours.

Management learned that Sun visited the TPMG facility on October 8 and October 9, 2014, in order to submit a verification of treatment (VOT) and complete a time-off

6

form related to his wife's surgery in November 2014, and to discuss personnel matters with a physician. Londono contacted Sun shortly thereafter to schedule a meeting. Sun stated he was unavailable because he was in Los Angeles, despite having been told that he was required to be available for meetings while on administrative leave. Sun indicated he wanted to be on "FMLA" related to his wife's surgery on November 3, 2014. Londono directed him to "the 1-877 HR number to fill out the proper forms."

TPMG terminated Sun's employment effective October 22, 2014, based on his inappropriate behavior and failure to follow reasonable directions, and as the culmination of a history progressive discipline. The decision to terminate Sun was made by Londono, Pat McKenna, and HR consultant Ron Rich. Londono, McKenna, and Rich are not officers or directors of TPMG; they do not have authority to set policies for TPMG, and do not make decisions that determine TPMG's corporate policies.

Londono and McKenna each stated that, prior to his termination, Sun did not complain of alleged illegal activity or noncompliance with state, federal, or local rules or regulations, nor did he complain about illegal, wrongful, or unsafe patient care, services, or conditions at the TPMG facility. At the meeting with management on October 22, 2014, Sun did not allege that he was denied protected leave, treated differently because of taking protective leave, or treated differently because of his age or national origin. Sun had not applied for CFRA/ FMLA leave at the time of his termination, or been approved for such leave. Londono confirmed that Sun's visit to the facility while on administrative leave was one of the reasons for his termination, based on his inability to follow directions.

At the time of Sun's termination, there were six full-time technologists in Sun's department, two of whom were Caucasian and four of whom were of Asian descent. After his termination, two of the existing Sonographers II in the department took over Sun's duties. Thereafter, a Sonographer I was hired; all qualified people who applied

7

were considered based on their seniority, as this was a union position. Neither age nor national origin was considered.

### B. Procedural History

Sun filed suit against TPMG in 2015, and amended his complaint in 2016, alleging causes of action for age discrimination, national origin discrimination, retaliation against whistleblowing, wrongful termination in violation of the CFRA, wrongful termination in violation of public policy, breach of the covenant of good faith and fair dealing, and punitive damages. TPMG answered the amended complaint, and thereafter moved for summary judgment or, in the alternative, summary adjudication as to each cause of action, providing a separate statement of undisputed material facts as required by Code of Civil Procedure section 437c, subdivision (b)(1). The court set the hearing on TPMG's motion in September 2017.

Prior to filing written opposition to the motion for summary judgment, Sun moved to compel TPMG's further response to a request for production of documents. Contemporaneously, Sun moved to continue or suspend the hearing on TPMG's summary judgment motion, citing Code of Civil Procedure section 437c, subdivision (h),[4] which requires the court to deny a motion for summary judgment, or continue the hearing, "if it appears from the affidavits submitted in opposition [to the motion] . . . that facts essential to justify opposition may exist, but cannot, for reasons stated, be presented. . . ." Sun alleged that TPMG was misusing the discovery process and refusing to produce specific documents that he believed were material to the action. Sun also claimed that TPMG would not provide information about the age and salary level of two new employees who "substituted [Sun's] position," and would not provide Sun a copy of the transcript from Sun's deposition.

---

[4] Undesignated statutory references are to the Code of Civil Procedure unless otherwise noted.

8

Sun filed opposition to TPMG's motion for summary judgment.  It is not clear from the record whether Sun submitted a separate statement to the trial court responding to the material facts contended by TPMG as required by section 437c, subdivision (b)(3). In his declaration in opposition to TPMG's motion, Sun indicated that he filed "Exhibit 1-20 of documentary evidences and Separate Statement of Undisputable Material Facts in Support of his Opposition to MSJ or MSA."[5]  He referenced the exhibits in portions of his opposition and declaration, but did not state what material facts the exhibits supported.

The court held a hearing on Sun's motion to continue and on TPMG's motion for summary judgment in September 2017.  The court denied the requested continuance, finding that Sun had failed to explain what if anything prevented him from obtaining the sought-after discovery sooner, and had failed to provide admissible evidence of any discovery abuse or dilatory tactics on TPMG's part.  The court noted that it was unclear whether most of the evidence Sun was seeking was "essential" to the issues to be adjudicated in the motion for summary judgment, in particular TPMG policies and Sun's own deposition transcript.  The court indicated that information about the age of the employees who replaced Sun would be "relevant and essential" to Sun's age discrimination claim.

The court then granted TPMG's motion for summary judgment.  In doing so, the court found that TPMG proffered evidence of legitimate, nondiscriminatory and nonretaliatory reasons for terminating Sun's employment.  The court also concluded that Sun had failed cite to admissible evidence showing that TPMG's asserted reasons were

_____

[5] Sun did not designate as part of the record on appeal his own separate statement. The superior court clerk sent a rejection letter on the date Sun filed his opposition to the summary judgment motion, stating "separate stmt missing signature."  Sun designated the exhibits referenced above as part of the record on appeal, and this court granted his motion to augment the record to include the exhibits when they were not provided in the clerk's transcript.

9

untrue or pretextual. Accordingly, the court ruled Sun's age discrimination, national origin discrimination, and retaliation claims failed. Similarly, regarding Sun's claim for wrongful termination in violation of the CFRA, the court found that Sun failed to produce evidence showing that TPMG terminated him because he exercised his right to take leave under the CFRA, and granted summary adjudication accordingly. As Sun's claim for wrongful termination in violation of public policy incorporated the allegations that made up the first four causes of action, the court ruled in TPMG's favor on that cause of action as well. The trial court found that Sun had not produced any admissible evidence of the existence of a contract between himself and TPMG, and thus granted summary adjudication on his claim for breach of the covenant of good faith and fair dealing. Finally, the court determined that TPMG proffered uncontroverted evidence that Londono, McKenna, and Rich did not exercise substantial independent authority and judgment in corporate decision making, such that punitive damages were not authorized under Civil Code section 3294, subdivision (b).

In October 2017, the trial court heard Sun's motion to compel TPMG's further responses to his request for production of documents. The trial court denied the motion, finding that Sun had "not met his burden of demonstrating good cause for production of the documents sought."[6]

The court thereafter entered judgment in TPMG's favor. Sun's appeal is timely and proper as to the October 2017 judgment and the relevant pre-judgment orders. ( §§ 904.1, subd. (a)(1), 906; Cal. Rules of Court, rule 8.104(d).)

---

[6] After filing notice of the instant appeal, Sun filed a motion for reconsideration of the order denying the motion to compel. The trial court's ruling on the motion is not part of the record on appeal. Based on the register of actions, it appears the trial court heard the motion in November 2017. To the extent Sun challenges the trial court's order on that motion, which the court issued after issuing the appealable judgment, Sun should have filed a separate notice of appeal. (See *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43.) This court will review only the trial court's October 2017 order denying the motion to compel.

### III. DISCUSSION

Sun challenges the orders denying his motion to compel further discovery responses and motion to continue the hearing on the motion for summary judgment, as well as the order granting summary judgment. Finding no error, we affirm the trial court's orders.

#### A. *The Court Properly Denied Sun's Motion to Continue*

Sun sought to continue the hearing on TPMG's motion for summary judgment pursuant to section 437c, subdivision (h), which states, "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just." We review the ruling on a request for a continuance under section 437c, subdivision (h) for abuse of discretion. (*Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 Cal.App.4th 632, 643 (*Chavez*).)

To obtain a continuance, Sun was required to show that the facts he sought were essential to opposing the motion, he had reason to believe those facts existed, and the reason why he needed additional time to obtain the facts. (*Chavez*, *supra*, 238 Cal.App.4th at p. 643.) "The reason for this 'exacting requirement' [citation] is to prevent 'every unprepared party who simply files a declaration stating that unspecified essential facts may exist' [citation] from using the statute 'as a device to get an automatic continuance.' [Citation.]" (*Ibid.*) Thus, Sun had the burden to justify his need for a continuance, " 'by detailing both the particular essential facts that may exist and the specific reasons why they cannot then be presented.' [Citation.]" (*Ibid.*)

Although Sun alleges on appeal that TPMG engaged in "discovery abuse and insufficient discovery," thus arguing that the trial court erred when it denied his continuance request, he does not cite to any evidence in the record on appeal in support

11

of his argument. He states that TPMG failed to produce documents pursuant to various provisions of the Code of Civil Procedure, but does not identify the efforts he made to obtain the documents prior to filing the motion to compel. Although the trial court stated that information concerning the age of the employees who replaced Sun is "essential" to establish Sun's claim for age discrimination, Sun has not shown that the trial court abused its discretion in then denying the requested continuance when Sun failed to explain why he was unable to obtain the information prior to the hearing on TPMG's motion for summary judgment. As the trial court noted, the case had been pending for over two years. Sun provided no explanation why he waited until after TPMG filed for summary judgment to seek the trial court's assistance in obtaining the information. Sun does not address this on appeal. Nor does he explain why he was unable to obtain his own copy of his deposition transcript, the other document he claims to be "essential" on appeal. As Sun did not meet his burden under section 437c, subdivision (h), to justify a continuance, the trial court did not err in denying his motion.

### B. The Court Properly Denied Sun's Motion to Compel Further Responses to Request for Production of Documents

It is not clear from Sun's opening brief whether he seeks review of the trial court's order denying his motion to compel TPMG's further responses to request for production. In the "argument" section of his brief, Sun includes a heading entitled "[Sun's] MOTION TO CONTINUE & MOTION TO COMPEL." He then argues that TPMG responded to multiple "RPD" with "false promises," without citing to any facts from the record on appeal. None of the exhibits cited by Sun in his opening brief concern his discovery efforts during the litigation. He has not cited to the initial request for production of documents, TPMG's response(s) thereto, or any efforts he made to obtain further responses from TPMG. Nor has Sun cited any legal authority in support of his contention that the trial court erred in denying his motion to compel. Sun bears the burden to prove that the trial court abused its discretion by denying the motion to compel. As he has

12

failed to do so, we find no error.  (See *Tanguilig*, *supra*, 36 Cal.App.5th at p. 520; *Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881.)

### C. *The Court Properly Granted Summary Judgment to TPMG*

We review an order granting summary judgment de novo, applying the same three-step analysis the trial court must employ:  "First, we identify the issues framed by the pleadings.  Second, we determine whether the moving party has established facts justifying judgment in its favor.  Finally, in most cases, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable issue of material fact.  [Citation.]"  (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 858-859 (*Serri*).)  "[W]e view the evidence in a light favorable to the losing party . . . , liberally construing [his or] her evidentiary submission while strictly scrutinizing the moving party's own showing and resolving any evidentiary doubts or ambiguities in the losing party's favor."  (*Id.* at p. 859.)

### 1. *Cause of Action for Age Discrimination*[7]

#### a. *Legal Principles and the Standard of Review*

California has adopted the so-called *McDonnell Douglas* test established by the United States Supreme Court for trying claims of employment discrimination.  (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 354 (*Guz*).)  That three-stage burden-shifting test "allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained."  (*Ibid*.)  While in a trial the plaintiff has the initial burden to establish a prima facie case of discrimination,[8] in a

---

[7] Sun raised two discrimination causes of action in his first amended complaint, age discrimination and national origin discrimination.  In his opening brief, Sun does not address the trial court's ruling on the national origin discrimination cause of action.  He addressed the issue in his reply brief without citing to any evidence from the record, or any legal authority.  As such, he has waived review of that issue.  (See *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418.)

[8] While the elements of a prima facie case may vary depending upon the nature of the claim, the plaintiff typically is required to proffer evidence that "(1) he was a member

13

motion for summary judgment "in 'an employment discrimination case, the employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors.' [Citations.]" (*Serri*, *supra*, 226 Cal.App.4th at pp. 860-861.) "If the employer has met its burden by showing a legitimate reason for its conduct, the employee must demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action." (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038.)

To meet his burden, the employee " 'cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.' " (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005 (*Hersant*).) Nor is it sufficient for the employee to show that the company lied about its reasons, as the pertinent laws prohibit discrimination rather than lying. (*Guz*, *supra*, 24 Cal.4th at pp. 360-361.) "[T]here must be evidence supporting a rational inference that *intentional discrimination*, *on grounds prohibited by the statute*, *was the true cause* of the employer's actions. [Citation.]" (*Id.* at p. 361.)

---

of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz*, *supra*, 24 Cal.4th at p. 355.)

14

### b. TPMG Carried its Burden to Show the Adverse Employment Actions Were Based on Nondiscriminatory Factors

Although TPMG suggests that it has shown that one or more elements of Sun's prima facie case is lacking,[9] it rests its arguments on appeal on the evidence it presented to demonstrate that it terminated Sun's employment based on legitimate, nondiscriminatory factors. We agree that TPMG carried its burden under the second step of the *McDonnell Douglas* test.

TPMG introduced admissible evidence of Sun's history of progressively worsening performance reviews based on his communication skills or lack thereof. It also introduced evidence of Sun's history of progressive discipline based on complaints made by patients and coworkers. TPMG suspended Sun from working on two separate occasions in 2013 and 2014, based on complaints about his care of a neonatal patient, and based on his failure to report for work. The last suspension occurred shortly before the October 1, 2014 meeting; TPMG notified Sun that failure to sustain acceptable performance and attendance in the future would likely result in termination.

On appeal, Sun argues that the evidence proffered by TPMG in support of the motion for summary judgment is not "legitimate," citing Evidence Code sections 412, 413, 600, subdivision (a), 601, 603, 604, and 1200. Sun has not cited to any portion of the record below wherein he objected to TPMG's evidence on these bases. "Evidentiary objections not made at the hearing [on the motion for summary judgment] shall be waived." (§ 437c, subds. (b)(5), (d).)

Sun further contends that TPMG failed to establish just cause for termination pursuant to the terms of the CBA. He alleges the CBA is "the only objective criteria to

---

[9] "[A] prima facie case[] of age discrimination arises when the employee shows (1) at the time of the adverse action he or she was 40 years of age or older, (2) an adverse employment action was taken against the employee, (3) at the time of the adverse action the employee was satisfactorily performing his or her job and (4) the employee was replaced in his position by a significantly younger person. [Fns. omitted.]" (*Hersant*, *supra*, 57 Cal.App.4th at p. 1003.)

15

justify the cause of termination per California Labor Code 1126," which provides that a collective bargaining agreement between an employer and a union is enforceable at law or in equity, and the remedies available for breach of such an agreement are the same as for other contracts. Sun cites to "*Cheal v. El Camino Hospital* 6th Court of Appeal H036548," suggesting that there is a legal requirement for an employer to "provide evidence of its policies and practices, including its treatment of other employees, before the court could find that no triable issue existed with respect to the employee's job performance."

This court is aware of only one published opinion issued in appeal number H036548: *Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736 (*Cheal*).[10] In discussing whether a plaintiff had made a prima facie showing of employment discrimination, the *Cheal* court considered what constitutes "satisfactory performance" under the first step of the *McDonnell Douglas* test. "What constitutes satisfactory performance is of course a question ordinarily vested in the employer's sole discretion. An employer is free to set standards that might appear unreasonable to outside observers, and to discipline employees who fail to meet those standards, so long as the standards are applied evenhandedly. But that does not mean that an employer conclusively establishes the governing standard of competence in an employment discrimination action merely by asserting that the plaintiff's performance was less than satisfactory. Evidence of the employer's policies and practices, including its treatment of other employees, may support a contention, and an eventual finding, that the plaintiff's job performance did in fact satisfy the employer's own norms. Such a finding not only carries the plaintiff's burden to show competence under the *McDonnell Douglas*/*Guz* analysis; it also grounds an inference that the true motive for the challenged action lay somewhere else, as in discriminatory animus." (*Cheal*, at pp. 742-743.)

---

[10] The language quoted by Sun in his opening brief does not appear in that opinion.

Although there was evidence in *Cheal* that the employee made "several mistakes" in performing her work, there was "strong evidence," provided by the *employee*, "that the [employer], under its own written policies, anticipated and expected such mistakes because, given the nature of the work, they were inevitable." (*Cheal*, *supra*, 223 Cal.App.4th at p. 743.) The *Cheal* court did not find that the employer bears the burden of providing evidence of its policies and practices before the trial court can grant a motion for summary judgment. Ultimately, Sun has not shown that TPMG failed to establish just cause for termination pursuant to the terms of the CBA.

### c. Sun Did Not Carry His Burden to Show Pretext

In light of TPMG's evidence that it had nondiscriminatory reasons for its challenged actions, the burden shifted to Sun to offer evidence that the asserted reasons were a pretext for discrimination or evidence of discriminatory motive. Sun attempts to show that TPMG terminated him as a result of discriminatory animus, or that TPMG's proffered nondiscriminatory reasons were false and thus pretextual.

First, Sun contends that he presented evidence of discriminatory animus based on Hsu's declaration, in which she stated that Londono "suddenly appear[ed]" in Hsu and Sun's "department work area and said to Mr. Sun 'You are so disgusting, go to the bathroom to cut your nails.' " To show discriminatory animus, the employee " 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [the asserted] non-discriminatory reasons." [Citations.]' [Citations.]" (*Hersant*, *supra*, 57 Cal.App.4th at p. 1005.) The single instance cited by Sun does not suffice to demonstrate that his termination resulted from discriminatory animus.

Next, Sun argues that the discipline history on which TPMG based at least part of its decision was "expired" under the terms of the CBA. While Sun contends the CBA

17

renders written disciplinary notices and documentation of employee counseling sessions "invalid" after one year, Sun does not cite to evidence in the record on appeal to support this contention. Moreover, TPMG produced evidence of disciplinary events within a year of Sun's termination. Sun does not cite to any evidence in the record disproving TPMG's evidence of a disciplinary history based on patient and coworker complaints. Nor does he provide evidence disputing the declining performance reviews he was receiving prior to his termination. Sun does not cite any evidence that TPMG's asserted reasons for terminating his employment were a pretext for age discrimination, other than to allege that Londono "deliberately concealed or evaded the information of the age discrimination in her deposition." Sun cites to a portion of Londono's deposition where she states she does not know the ages of the two employees who took over the hours that Sun used to work. From this he asserts that Londono deliberately withheld the age-related information regarding other employees. He does not provide additional evidence to demonstrate that Londono falsified her answer, or otherwise "deliberately concealed or evaded" information related to the age discrimination claim.

Sun argues that the trial court added a fourth and fifth step to the *McDonell Douglas* test by stating that "falsity of the reasons for termination alone is not enough to create a triable issue of fact," and by finding that Sun had not produced evidence to support a rational inference of age discrimination. But the Supreme Court indicated in *Guz* that the consideration of whether a company lies about its reasons for discrimination is part of the trial court's evaluation under the three-step test. (See *Guz*, *supra*, 24 Cal.4th at pp. 360-361.) The trial court's statement was thus not inconsistent with either *Guz* or *McDonnell Douglas*. And even if the trial court incorrectly interpreted or applied the law, we independently review the evidence, and conclude that there is no triable issue of fact.

In sum, we conclude Sun failed to meet his burden of producing substantial evidence that TPMG's stated reasons terminating him were untrue or pretextual, or that

18

TPMG acted with a discriminatory animus, such that a reasonable trier of fact could conclude it engaged in intentional age discrimination. (*Serri*, *supra*, 226 Cal.App.4th at p. 868.) Accordingly, the court properly granted summary adjudication to TPMG on Sun's age discrimination claims.

2. *Cause of Action for Retaliation Against Whistleblowing*

"To establish a prima facie case of retaliation, the plaintiff must show (1) he or she engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citations.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation. [Citation.]" (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453.) "Retaliation may be proven by circumstantial evidence. [Citation.] This includes the temporal proximity between a protected disclosure of information and adverse treatment. [Citation.]" (*Taswell v. Regents of University of California* (2018) 23 Cal.App.5th 343, 365.)

Sun made his claim for retaliation pursuant to Labor Code section 1102.5 and Health and Safety Code section 1278.5. Labor Code section 1102.5 precludes an employer from retaliating against an employee "for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of

19

whether disclosing the information is part of the employee's job duties." (Lab. Code, § 1102.5, subd. (b).) Health and Safety Code section 1278.5 recognizes that there exists a public policy to encourage health care workers to "notify government entities of suspected unsafe patient care and conditions." (Health & Saf. Code, § 1278.5, subd. (a).) A health facility cannot retaliate against an employee who presents a grievance or complaint "to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity." (Health & Saf. Code, § 1278.5, subd. (b)(1)(A).)

As previously discussed, as this matter involved a motion for summary judgment, TPMG had the initial burden to establish a legitimate reason for Sun's termination. Our independent review has established that the evidence demonstrates that TPMG met its burden to show just cause for termination. In response, Sun was required to make a prima facie showing that he engaged in protected activity, either by providing information that would disclose a violation of a statute, rule, or regulation under Labor Code section 1102.5, subdivision (b), or by presenting a complaint or grievance concerning suspected unsafe patient care and conditions under Health and Safety Code section 1278.5. We conclude based on our review of the evidence that Sun has not made this showing.

Sun does not cite to any evidence demonstrating that he engaged in protected activity. He claims that he reported the "unlawful practice" of certain nurses, but the portion of the record he cited does not include evidence of such a report. Sun discussed his concerns about nurses' conduct at his deposition. Contrary to his assertions in his opening brief, he did not testify that he expressed these concerns in any meaningful or understandable way during the October 1, 2014 meeting.

Londono's deposition testimony, cited by Sun, does nothing to support his contention that he engaged in protected activity at the October 1, 2014 meeting. Londono recalled that Sun raised issues about "nurses complaining that he . . . rips things off the

20

patients." Sun suggests that Londono was willfully suppressing evidence about his alleged whistleblowing, without specifying what evidence was suppressed, and without citing to any evidence of such suppression in the record.

Similarly, the statements of other attendees of the October 1, 2014 meeting do not reveal that Sun engaged in protected activity at that time. None of the attendees indicated that Sun was disclosing a violation of a statute, rule or regulation, or providing a complaint about unsafe patient care and conditions. To the contrary, they indicated that Sun expressed dissatisfaction with his experience at TPMG and complained about prior discipline that had been imposed on him. The relevant statutes do not include general expressions of dissatisfaction as a protected activity.

Sun alleges that notifying TPMG of his need to take time off for his wife's surgery constitutes protected activity, as he claims his wife needed the surgery as a result of the negligence of a TPMG doctor. He cites to an "expert witness declaration" in an arbitration matter regarding his wife's medical treatment. There is no evidence that Sun provided the exhibit to Londono, McKenna, or Rich prior to his termination. Neither the VOT Sun claims he filed while on administrative leave nor the form he completed to request time off to care for his wife refer to the cause for her surgery.

Finally, without citing any legal authority, Sun contends that TPMG's "retaliatory termination" violated the California Department of Managed Care's policy of continuity care. We will disregard this conclusory and unsupported argument. (*Tanguilig*, *supra*, 36 Cal.App.5th at p. 520.)

Sun did not meet his burden to make a prima facie showing that he engaged in a protected activity. Thus, the trial court did not err in granting summary adjudication as to this cause of action.

*3. Cause of Action for Wrongful Termination in Violation of CFRA*

"The Moore-Brown-Roberti Family Rights Act (CFRA) ([Gov. Code, ]§ 12945.1 et seq.) 'is intended to give employees an opportunity to take leave from work for certain

21

personal or family medical reasons without jeopardizing job security.' [Citations.] The CFRA makes it unlawful for an employer of 50 or more persons 'to refuse to grant a request by an employee' for family care and medical leave and 'to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right' provided by the CFRA. ([Gov. Code, ]§ 12945.2, subds. (a), [(q)].) It is also an unlawful employment practice to discharge or discriminate against any individual because of his or her exercise of the right to family care or medical leave as provided by the CFRA. ([Gov. Code, ]§ 12945.2, subd. [(k)](1).)" (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 600-601 (*Soria*).) "Family care and medical leave" includes "Leave to care for a . . . spouse . . . who has a serious health condition." (Gov. Code, § 12945.2, subd. (b)(4)(B).) Sun contends TPMG terminated his employment after learning that he wanted to take leave related to his wife's surgery, scheduled in November 2014.

"Like claims for discrimination, CFRA retaliation claims . . . are subject to the *McDonnell Douglas* burden-shifting analysis. [Citations.] [¶] In order to establish a prima facie case for retaliation as required by the first prong of the *McDonnell Douglas* burden-shifting analysis, an employee must show: '(1) he or she engaged in a "protected activity[ ]" [such as taking leave for a CFRA-protected purpose,] (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.' [Citation.] 'If the employee successfully establishes these elements and thereby shows a prima facie case exists, the burden shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action.' [Citation.] If the employer satisfies this prong by producing evidence demonstrating the existence of 'a legitimate reason for the adverse employment action, "the presumption of retaliation ' " 'drops out of the picture,' " ' [citation], and the burden shifts back to the employee to provide "substantial responsive evidence" that the employer's proffered reasons were untrue or

22

pretextual.' [Citation.]" (*Bareno v. San Diego Community College Dist.* (2017) 7 Cal.App.5th 546, 560 (*Bareno*).)

As the instant matter concerns a motion for summary judgment, TPMG had the initial burden to produce admissible evidence that one of more of Sun's prima facie elements was lacking, or that Sun's termination was based on legitimate, nonretaliatory bases. (*Bareno*, *supra*, 7 Cal.App.5th at p. 561.) The trial court found TPMG produced admissible evidence that Sun's termination was based on legitimate, nonretaliatory bases. In support of the trial court's finding, TPMG cites Sun's history of progressive discipline and the specific complaints lodged against Sun through October 2014, the evidence of which we discussed at length, *ante*.

Although Sun contends the adverse employment action followed on the heels of his protected requested for leave, the evidence shows that TPMG began undertaking discipline of Sun before Sun purportedly requested leave on October 8 or October 9, 2014. Sun was advised on October 7, 2014, that he would be placed on administrative leave and that he should not be at the facility "until authorized by Management," except for medical appointments or for the pharmacy. Sun acknowledged understanding these instructions. Thus, TPMG met its burden to show legitimate reasons for Sun's termination, unrelated to Sun's request for leave.

Sun suggests the mere fact he submitted a leave request on October 8, 2014, reveals TPMG's pretext, stating that TPMG had an "obligation to notify his CFRA right by California Code of Regulation 7297.1, 7297.4 (5) (6), 7297.9." He contends that TPMG's failure to provide him with notice of his rights under the CFRA precluded the trial court from granting summary judgment. In doing so, he cites *Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864 (*Faust*), a case in which an employee was terminated after submitting insufficient paperwork to sustain an approved absence from his job. (*Id.* at p. 872.) Following a motion for summary judgment by the employer, the employee argued that a triable issue of fact existed as to whether the

23

employer interfered with his rights under the CFRA. (*Id*. at p. 873.) On appeal, the employee contended that the trial court erred in applying the *McDonnell Douglas* burden shifting analysis to his claim; the appellate court agreed that "an interference claim under the FMLA (and thus the CFRA) does not involve the [*McDonnell Douglas* test]. . . . A violation of the FMLA 'simply requires that the employer deny the employee's entitlement to FMLA leave.' " (*Id*. at p. 879.) Unlike the employee in *Faust*, Sun alleges retaliation based on his application for leave, not interference with his rights under the CFRA. Sun has not cited any relevant legal authority indicating that a failure to comply with relevant California Codes of Regulation defeats a motion for summary adjudication of a retaliation claim, rather than an interference claim.

Sun also contends that TPMG's assertion that Sun was terminated because he appeared on-site on October 8 and 9, 2014, in violation of management directives is evidence that TPMG terminated his employment because he sought leave. TPMG contended that Sun's presence at the facility was "defiant of instructions given to [Sun] by Management with regard to your status on paid administrative leave pending results of the investigation." Temporal proximity between protected activity and an adverse employment action can suggest retaliation. (*Bareno*, *supra*, 7 Cal.App.5th at p. 560.) However, "temporal proximity by itself, while sufficient to establish a prima facie case, is not adequate to show pretext. [Citation.] [¶] Where the employee relies solely on temporal proximity in response to the employer's evidence of a nonretaliatory reason for termination, he or she does not create a triable issue as to pretext, and summary judgment for the employer is proper." (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 357.)

TPMG met its burden to show legitimate, nonretaliatory reasons for terminating Sun. Sun has not provided substantial responsive evidence that TPMG's proffered reasons were untrue or pretextual. The trial court did not err in granting summary adjudication as to this cause of action.

24

### 4. *Cause of Action for Wrongful Termination in Violation of Public Policy*

"To prevail on a claim for wrongful termination in violation of public policy, a plaintiff must show that (1) the plaintiff was employed by the defendant, (2) the defendant discharged the plaintiff, (3) a violation of public policy was a motivating reason for the discharge, and (4) the discharge harmed the plaintiff. [Citations.]" (*Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1343.) "The public policy supporting a claim of wrongful termination must meet the following four criteria: 'First, the policy must be supported by either constitutional or statutory provisions. Second, the policy must be "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be "fundamental" and "substantial." ' [Citation.]" (*Id.* at p. 1344.)

In his first amended complaint, Sun alleged that TPMG's "actions including retaliating against Plaintiff for reporting and/or opposing unlawful conduct, and for his application for FMLA as well as the other things discussed above, constitute the tort of wrongful termination in violation of the public policy of the State of California." On appeal, Sun does not clearly articulate the public policies TPMG allegedly violated in terminating his employment, aside from those against retaliation as implied in his causes of action for retaliation against whistleblowing and wrongful termination in violation of CFRA. Based on our de novo review of the record, we have concluded that TPMG had legitimate, nonretaliatory bases for terminating Sun. We perceive no evidence, and Sun has not directed us to any in the record, in support of the claim that violation of the public policy enjoining retaliation was a motivating reason for his termination.

Sun further contends that "Defendant cancellation of the scheduled repair surgery and dumping its victim of negligence to Med-Cal also encroached public interest," citing to an "expert witness declaration" from an arbitration matter. Sun does not cite any facts supporting his implied contention that TPMG violated a public policy by allegedly

25

cancelling a surgery, or that such violation was the motivating factor behind TPMG's termination of Sun's employment. Nor does Sun cite to statutory or constitutional provisions supporting the alleged public policy at issue. Sun has not demonstrated on appeal that the trial court erred in granting summary adjudication on this cause of action.

     5.  *Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing*

" 'The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract.' [Citation.] The covenant does not exist independently of the underlying contract. [Citation.] 'Generally, the implied covenant operates to protect the express covenants or promises of the contract.' [Citation.] 'The precise nature and extent of the duties imposed under the implied covenant thus depend upon the purposes of the contract.' [Citation.]" (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 711-712.) TPMG moved for summary adjudication of Sun's cause of action for breach of the covenant of good faith and fair dealing solely on the basis that in his first amended complaint Sun did not allege the existence of a relevant contract between himself and TPMG, or the breach of a relevant contract. Rather, he alleged that he was "a union member and [TPMG] were bound by their employment contract." The trial court agreed that Sun had not produced any admissible evidence of the existence of a contract between himself and TPMG, and thus granted summary adjudication, finding that the fact Sun's "employment was subject to or governed by a CBA does not mean that the CBA is a contract between [Sun] and TPMG."

On appeal, Sun contends TPMG's first undisputed material fact, as set forth in its separate statement in support of the summary judgment motion, proves the existence of the required contract between Sun and TPMG: "During the years 2007-2014, Samuel Sun was employed by The Permanente Medical Group, Inc. ('TPMG') and his employment was governed TPMG policies and a Collective Bargaining Agreement

26

('CBA')[.]" Sun then purports to quote specific provisions of the CBA. However, the CBA is not part of the record on appeal before us. (See fns. 3, 8, *ante*.) We thus may disregard his contentions. (*Tanguilig*, *supra*, 36 Cal.App.5th at p. 520.) Even if we were to consider the CBA, the provisions Sun himself cites make clear that he is at best a third-party beneficiary of the agreement. In addition, the CBA includes a discharge grievance process. Even if we assume that Sun's status as a third-party beneficiary made him a party to the CBA, he neither pled in his complaint nor in his briefing that he exhausted this grievance process.

Further, the legal authority cited by Sun does not support Sun's contention that he was in a contractual relationship with TPMG simply by virtue of his union membership and participation in the CBA. Labor Code section 1126 confirms that collective bargaining agreements between an employer and a union are enforceable at law or in equity, and subject to the same remedies for breach as other contracts. It does not provide that such an agreement between an employer and a union automatically creates a contractual relationship between the employer and individual union member employee. Similarly, the Supreme Court's decision in *Guz*, *supra*, 24 Cal.4th at pages 349-350, does not require the trial court to assume the existence of a contractual relationship between a union member employee and an employer based on a collective bargaining agreement between a union and an employer.

For these reasons, we conclude Sun has not demonstrated that the trial court erred in granting summary adjudication on this cause of action.

### 6. *Cause of Action for Punitive Damages*

In his first amended complaint, Sun sought punitive damages pursuant to Civil Code sections 3294-3296. As discussed, *ante*, TPMG has provided sufficient evidence to show no triable issue of fact as to the other causes of action in Sun's complaint. TPMG has demonstrated that it had legitimate, nondiscriminatory and nonretaliatory reasons for terminating Sun's employment, and has shown that Sun cannot establish one or more

27

elements of his other causes of action.  Sun supports his cause of action for punitive damages with the same factual contentions that underlie the previous claims, contentions for which he has failed to produce sufficient supporting evidence.  We conclude that the trial court did not err when it granted summary judgment on Sun's punitive damages claim.

## IV. DISPOSITION

The September 14, 2017 order denying Sun's motion to continue the hearing and granting TPMG's motion for summary judgment, October 3, 2017 order denying Sun's motion to compel further responses to request for production of documents, and October 20, 2017 judgment are affirmed.

_____

Greenwood, P. J.

WE CONCUR:


_____

Lie, J.


_____

Wilson, J.


Sun v. The Permanente Medical Group
H045278